# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ADVANCED DIGITAL FORENSIC
SOLUTIONS, INC.,

        Plaintiff,

        v.

LTU TECHNOLOGIES, INC., *et al.*,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.: 1:07-cv-00683 CKK

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS JASTEC CO. LTD.'S AND JASTEC INTERNATIONAL, INC.'S MOTION PURSUANT TO FED. R. CIV. P. 12(B)(2) AND (5) TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND QUASH SUMMONS**

Joseph E. Schuler (DC Bar #296269)

JACKSON LEWIS LLP
8614 Westwood Center Drive, Suite 950
Vienna, VA 22182
(703) 821-2189

ATTORNEYS FOR DEFENDANT
LTU TECHNOLOGIES, INC. *ET. AL.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................. ii

PRELIMINARY STATEMENT .......................................................... 1

ARGUMENT ............................................................................ 3

POINT I:  THE LTU COMPANIES ARE NEITHER ALTER EGOS OR AGENTS
          OF THE JASTEC COMPANIES ................................................ 3

A. ALTER EGO.......................................................................... 3

B. AGENCY .............................................................................. 7

C. PERSONAL JURISDICTION ........................................................ 10

D. DISCOVERY RELATIVE TO JURISDICTION...................................... 12

POINT II:  JASTEC TOKYO WAS IMPROPERLY SERVED AND IS NOT
           SUBJECT TO THE COURT'S JURISDICTION ................................ 17

CONCLUSION............................................................................ 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

Akzona Inc. v. E.I. Du Pont De Nemours and Co.,
607 F. Supp. 227 (D. Del. 1984)............................................................................5

Calvert v. Huckins,
875 F. Supp. 674 (E.D. Cal. 1995).........................................................................5

Caribe Trailer Systems, Inc. v. Puerto Rico Maritime Shipping Authority,
475 F. Supp. 711 (D.D.C. 1979)..........................................................................6, 7

Diamond Chemical Company, Inc. v. Atofina Chemicals, Inc.,
268 F. Supp. 2d 1 (D.D.C. 2003) .........................................................................15

Doe v. Unocal Corp.,
248 F.3d 915, 2001 U.S. App. LEXIS 7691 (9th Cir. 2001) ...........................5, 7

International Shoe Co. v. State of Washington,
326 U.S. 310 (1945)..............................................................................................12

Jin v. Matuszak,
2006 U.S. Dist. LEXIS 75390 (E.D.N.Y. 2006)...................................................17

Richard v. Bell Atlantic Corp.,
946 F. Supp. 54 (D.D.C. 1996)........................................................................7, 8, 9

Shapiro, Lifschitz & Schram, P.C. v. Hazard, et al.,
90 F. Supp. 2d 15, 2000 U.S. Dist. LEXIS 4162 (D.D.C. 2000) .....................3, 4

United States v. Bestfoods,
524 U.S. 51, 118 S. Ct. 1876 (1998).......................................................................7

## FEDERAL STATUTES

Fed. R. Civ. P. 12(b)(2).........................................................................................1, 2

## PRELIMINARY STATEMENT

Defendants JASTEC Co., Ltd. ("JASTEC TOKYO") and JASTEC International, Inc. ("JASTEC International") by and through their undersigned attorneys, hereby submit their Memorandum of Law in Reply to Plaintiff's Opposition to Defendants' Motion Pursuant to Fed. R. Civ. P. 12(b)(2) and (5) to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and Quash Summons.

Plaintiff opposes Defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) on the ground of lack of jurisdiction based upon three arguments. First, Plaintiff alleges, by means of conjecture, there is no discernible distinction among JASTEC TOKYO, JASTEC International, LTU Technologies, Inc. (LTU Technologies) and LTU Technologies S.A. (LTU SAS), alleging they are all part of the same "integrated enterprise". Therefore plaintiff argues this Court has jurisdiction over the JASTEC companies based upon the actions of the LTU companies, pursuant to an "alter ego" or "agency" theory of jurisdiction.

Second, Plaintiff alleges, with similarly inadequate support, that JASTEC TOKYO has minimum contacts with the District of Columbia by virtue of its own actions and is subject to the Court's jurisdiction.

Finally, Plaintiff argues in the alternative that if neither jurisdictional argument succeeds, it is entitled to discovery on the topic of jurisdiction. Plaintiff's opposition to Defendant's motion is, for the most part, based upon misinterpretation of the JASTEC TOKYO 2005 and 2006 financial reports available to the public; reliance upon a settlement agreement governed by the laws of the State of California which arose from

1

litigation to which neither JASTEC company was a party; and by reliance upon unsubstantiated internet articles, amounting to inadmissible hearsay that should be disregarded by the Court.

Significantly, Plaintiff utterly fails to dispute the sworn testimony of Shigeru Kamiyama, Chairman, President and CEO of JASTEC TOKYO or of Noboru Nakatani, President of JASTEC International regarding the inter-relations of the various corporations and their distinct corporate identities and functions. These uncontested sworn statements clearly show this Court lacks jurisdiction over the moving Defendants.

Finally, Plaintiff opposes Defendants' motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(5) for lack of proper service, arguing its service of the Summons and Complaint upon JASTEC TOKYO by service upon JASTEC International and LTU Technologies is good service either (1) under the "alter ego" theory promoted to support Plaintiff's jurisdictional claims; or (2) under the theory of "reservice" of the complaint upon the corporate entity for which it was intended. Neither argument is substantiated by adequate facts.

As set forth below, Plaintiff's arguments fail in all respects and Defendants JASTEC TOKYO and JASTEC International should be dismissed from the instant action.

## ARGUMENT

## POINT I

## THE LTU COMPANIES ARE NEITHER ALTER EGOS OR AGENTS OF THE JASTEC COMPANIES

**A.    ALTER EGO**

Plaintiff argues that the LTU companies amount to the alter ego of the JASTEC companies, relying primarily upon 2005 and 2006 JASTEC Financial Reports (Pl. Exh. A and B) and upon a JASTEC Website page, entitled "Jastec's Globalization Vision" (Pl. Exh. C).

As set forth in Defendant's Motion in Chief and not disputed by Plaintiff, in order to show that a company is an alter ego of another to permit the court to pierce the corporate veil and exercise jurisdiction over a parent corporation for the acts of a subsidiary, "the plaintiff must show by affirmative evidence that two elements have been satisfied: (1) there is such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) if the acts are treated as those of the corporation alone, will an inequitable result follow?" Shapiro, Lifschitz & Schram, P.C. v. Hazard, et al., 90 F.Supp. 2d 15, 2000 U.S. Dist. LEXIS 4162 (D.D.C. 2000) To assess whether the corporations are truly separate, the court will examine the following factors: "(1) the nature of the corporate ownership and control; (2) failure to maintain corporate minutes; (3) substantial disregard of the formalities of the corporate form; (4) comingling of funds and other assets of the corporation; (5) diversion of the corporation's funds and other assets to non-corporate uses such as the personal use of the corporation's shareholders; and (6) use of the same office or business location by the corporation and its individual shareholders." Id. at **24-**25

3

In the instant matter, Plaintiff has presented no facts, other than that JASTEC TOKYO owns all the subsidiaries at issue in the instant matter, a fact Defendant readily admit, to promote its argument that jurisdiction should extend to the JASTEC companies based on the actions of the LTU subsidiaries. Defendants presented sworn statements that, among many other factors, the JASTEC companies *do not* control the operations of the LTU companies, that all corporate formalities are maintained, that separate corporate minutes are kept, that there is no co-mingling of funds of the corporations, that no corporate assets are diverted to personal use and that the offices of all the corporations are different, with JASTEC TOKYO in Japan, JASTEC International in New York City, LTU S.A.S. in Paris and LTU Technologies in the District of Columbia. Nothing contained in the sworn statements by JASTEC executives has been controverted or even mentioned by Plaintiff in its opposition to Defendants' motion.

Additionally, there has been no suggestion, nor can there be, that any injustice will result if JASTEC TOKYO and JASTEC International are dismissed from the case. Plaintiff makes no argument and raises no facts to suggest that the LTU entities are underfunded or incapable of paying a judgment, should one be obtained. There has been no allegation of fraud that would suggest such a result because there is no evidence to support such an allegation. Because Plaintiff cannot meet either branch of the test set forth in Shapiro, id. at **24-**25, Plaintiff's argument must fail in all respects.

### 1. The JASTEC Financial Reports

JASTEC consolidated financial statements provide information relative to JASTEC TOKYO and its subsidiaries, JASTEC International, and the LTU companies, making reference to the various corporate entities as divisions. (Pl. Exhs. A and B) However, Plaintiff's unfounded quantum leap in logic that the consolidated statement demonstrates to the conclusion the companies are all part of a single "integrated" enterprise is utterly without basis or merit – and is simply untrue.

The issue of a consolidated financial report is addressed foursquare in <u>Doe v. Unocal Corp.</u>, 248 F.3d 915, 2001 U.S. App. LEXIS 7691 (9th Cir. 2001), a case upon which Plaintiff relies to support its argument relative to service of process. In <u>Doe</u> the court specifically held "blurring corporate separateness in language of an annual report" is inadequate to establish the liability of a parent company for the acts of the subsidiary. <u>Id.</u> at **24 (<u>citing</u> <u>Akzona Inc. v. E.I. Du Pont De Nemours and Co.</u>, 607 F. Supp. 227, 238 (D. Del. 1984)). "Consolidating the activities of a subsidiary into the parent's report is a common business practice." <u>Id.</u> at **30-31 (<u>citing</u> <u>Calvert v. Huckins</u>, 875 F.Supp. 674 (E.D. Cal. 1995)). "Likewise, references in the parent's annual report to subsidiaries or chains of subsidiaries as divisions of the parent company do not establish the existence of an alter ego relationship." <u>Id.</u>, **26 (<u>citing</u> <u>Akzona</u>, supra at 238). It is clear that inclusion of its subsidiaries in JASTEC's financial report, fails to show the LTU companies are alter egos of the JASTEC companies. This is especially true in light of the extensive unchallenged facts before the Court as set forth in the Nakatani and Kamiyama Declarations, demonstrating otherwise.

Plaintiff also relies upon a statement in the 2005 Financial Report (that is translated from Japanese to English) that JASTEC International was included in the report "as its importance with regard to the control of the business activities of overseas subsidiary increased as a holding company." (Pl. Brief, p. 3) In fact, Plaintiff claims that statement is *dispositive* of the issue of jurisdiction, relying on <u>Caribe Trailer Systems, Inc. v. Puerto Rico Maritime Shipping Authority</u>, 475 F.Supp. 711, 718 (D.D.C. 1979). However, there are two critical weaknesses in Plaintiff's argument. First, the court in <u>Caribe</u> declined to find jurisdiction of the parent based on the activities of the subsidiary because the corporations maintained separate identities and carried on their own activities, exactly the case in the instant matter. Secondly, Plaintiff provides no facts to overcome the very detailed affidavits of Messrs. Nakatani and Kamiyama that indicate JASTEC TOKYO and LTU Technologies are engaged in very different businesses and maintain separate and distinct companies. Plaintiff simply concludes the statement in the 2005 Financial Report, standing alone, must mean that JASTEC has its "hands on the wheel" of its subsidiaries.

Moreover, putting aside for a moment, that Plaintiff's conclusion is unsupported by any facts, even if JASTEC International is involved with its subsidiary, such involvement does not create jurisdiction over JASTEC International or JASTEC TOKYO for the acts of either LTU Defendant. "The Supreme Court articulated a generally applicable principle that a parent corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is consistent with the parent's investor status ... appropriate investor involvement includes monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget

6

decisions and articulation of general policies and procedures." <u>Doe</u>, <u>supra</u>, at **19-**20

(<u>citing</u> <u>United States v. Bestfoods</u>, 524 U.S. 51, 118 S.Ct. 1876 (1998))

In the instant case, while JASTEC International owns the LTU Defendants and has a consulting contract with LTU S.A.S, there is no evidence to suggest that its involvement includes more. As set forth in the Nakatani and Kamiyama Declarations, the JASTEC companies are separate and distinct from the LTU companies and function well within the parameters contemplated by the Supreme Court as set forth above. Additionally, it is not disputed that LTU Technologies and LTU S.A.S. were a solvent and on-going business prior to their acquisition by JASTEC International, further undermining Plaintiff's unsupported speculation that either JASTEC entity is "at the wheel."

### B.    **AGENCY**

Plaintiff also advances an agency theory of liability against JASTEC TOKYO and JASTEC International for the acts of its subsidiaries. Plaintiff suggests JASTEC's ownership of LTU is not an investment but amounts to an "alternative means of transacting business by the parent corporation," relying upon <u>Caribe</u>, <u>supra</u>, in which the court held the companies at issue therein to be separate and distinct, denying jurisdiction over the parent for the acts of the subsidiary. However, Plaintiff provides no facts to support its theory.

To show agency, the court will look to (1) the interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. <u>Richard v. Bell Atlantic Corp.</u>, 946 F. Supp. 54, 70

(D.D.C. 1996). As stated above, the only element of the test that can be met is common ownership.

Plaintiff erroneously relies on JASTEC' website page "Globalization Vision" to suggest that LTU was a "platform for JASTEC's operations outside of Japan." (Pl. Ex. C) In fact, the Globalization Vision does not mention LTU. It states "JASTEC's globalization vision is to expand its presence globally in the prepackaged enterprise software sector." Notably, the prepackaged software market is not one in which JASTEC TOKYO is engaged (Complaint ¶5). The Globalization Vision goes on to state: "In order to achieve these goals in a realistic time frame, the Company intends to acquire a U.S. prepackaged software company as a platform for JASTEC's operations outside of Japan and as a base to acquire other prepackaged enterprise software companies in the U.S." Nothing in the statement of the Globalization Vision supports the Agency Test set forth in Richard, id. at 70.

Plaintiff further asserts that JASTEC TOKYO exercises centralized control over its subsidiaries' labor relations because the JASTEC 2005 Report purportedly reflects that retirement benefits are based upon projected liabilities and assets on the "consolidated closing date." (Pl. Brief, p. 3) Plaintiff also argues the JASTEC 2005 Report "appears to count the employees of subsidiaries as employees of the JASTEC Group" in a strained attempt to bolster its unfounded assertion that JASTEC TOKYO exercises control over its subsidiaries' labor relations. Plaintiff then misinterprets information in the JASTEC 2005 report about the location of various corporate headquarters as reflected in the JASTEC 2005 Report. These facts fall far short of that necessary to reach such a result.

8

First, Plaintiff misinterprets the JASTEC 2005 Report when it asserts the offices of JASTEC International, LTU S.A.S. and LTU Technologies are all the same as that of JASTEC TOKYO. The report indicates, albeit, incorrectly, that JASTEC International's headquarters is in "Delaware USA" (JASTEC International is incorporated in Delaware and its office is in New York City). However, the report does not indicate JASTEC International is headquartered in Japan; LTU S.A.S.' headquarters is referenced as being in "Paris, France" and LTU Technology's headquarters is referenced as being in "Washington, D.C., U.S.A." Plaintiff's allegations in this respect appear to be errors born of wishful thinking.

Plaintiff's argument regarding pension benefits is speculative at best. Even if retirement benefits were linked to the overall financial condition of JASTEC TOKYO and its subsidiaries, such evidence is not the type contemplated by the courts to assess whether a parent company controls the labor relations of its subsidiaries. In such an analysis the court looks to entirely different factors: whether the parent hired, or fired subsidiary employees or authorized lay offs, recalls and promotions; whether the parent company transferred employees between it and a subsidiary, used the same work force or handled the subsidiary's payroll; whether the parent company oversaw the day to day employment decisions of the subsidiary and shared a common human resources staff. Richard, id at 62.

Plaintiff addresses none of these factors and provides only a speculative and conclusory statement that JASTEC TOKYO has some say to determine the retirement benefits of its employees and the employees of its subsidiaries and that it appears to include in its 2005 Financial Report a headcount of employees inclusive of those of its

9

subsidiaries. Such "evidence" is woefully inadequate to show that LTU Technologies or

LTU SAS is an agent of either JASTEC company. The unrefuted affidavits of Mr.

Nakatani and Mr. Kamiyama show otherwise.

### C.    PERSONAL JURISDICTION

Next, Plaintiff suggests that JASTEC TOKYO and JASTEC International have

both directly engaged in business in the District of Columbia, giving rise to jurisdiction in

this forum. For this argument, Plaintiff relies upon two allegations. First, Plaintiff

asserts that JASTEC TOKYO and/or JASTEC International contracted for the services of

The Ashcroft Group, LLC to lobby on their behalf through their subsidiaries for business

with the United States Government in the District of Columbia. Second, Plaintiff alleges

that a settlement agreement between LTU Technologies and LTU S.A.S. and a former

employee, a resident of the District of Columbia provides the requisite contact with the

District of Columbia to confer jurisdiction over either JASTEC TOKYO or JASTEC

International or both. Plaintiff is mistaken in both instances.

### 1.    The Ashcroft Group LLC

Plaintiff's "proof" regarding an alleged contract with the Ashcroft Group amounts

to two inadmissible internet websites, consisting entirely of hearsay and completely

without authentication. The websites purport to report that The Ashcroft Group, LLC, a

lobbying concern founded by the late Attorney General, John Ashcroft, contracted with

JASTEC TOKYO (or JASTEC International) to assist LTU Technologies and/or LTU

S.A.S. in their efforts to secure contracts from federal government agencies. Putting

aside for the moment that neither Plaintiff's Exhibits E or F is admissible, both Exhibits

are also wrong, thus reminding us why hearsay is suspect as evidence.

Attached hereto is a copy of the contract for the services of The Ashcroft Group, LLC, between it and LTU Technologies. (Asano Aff., Exhibit B)   Neither JASTEC TOKYO nor JASTEC International is a party to the Ashcroft contract nor is either entity financially responsible for the payments there under.  Furthermore, the Lobbying Reports filed with the Secretary of State and the Clerk of the House of Representatives (Asano Aff., Exhibit A) reflects the Ashcroft Group's services were rendered on behalf of LTU Technologies.     The contract and the official documents attached hereto irrefutably discredit the unreliable and inadmissible internet "reports" provided by Plaintiff.  Based upon the foregoing, clearly LTU Technologies engagement of a lobbying firm cannot establish jurisdiction over either JASTEC entity.

### 2.    The Wallia Settlement Agreement and Release

The Wallia settlement agreement and release upon which Plaintiff relies is completely inadequate to show either JASTEC company has "done business" in the District of Columbia.  First, neither JASTEC company is a party to the settlement agreement.  That JASTEC TOKYO and JASTEC International, as parent companies of the LTU parties, are included in a standard list of "releasees" can hardly be said to reflect either JASTEC company anticipated being haled into court in the District of Columbia. Further, the settlement agreement and release contains California choice of law and venue provisions  which further undermines any claim of jurisdiction over the JASTEC entities in the District of Columbia.

Indeed, in an action in the Superior Court of the District of Columbia, J.J. Wallia moved to dismiss the claims against him in the District of Columbia based on the choice of law and choice of venue provisions of the settlement agreement and release upon

11

which Plaintiff now relies. ADF, where Mr. Wallia was a principle, should not now be heard to invoke the same settlement agreement and release to attempt to create jurisdiction over the JASTEC entities in this Court.

Furthermore, the act of Mr. Wallia, a resident of the District of Columbia who signed on his own behalf in the District of Columbia, cannot be imputed to the JASTEC companies to subject them to the jurisdiction of this Court in the instant action. There is simply no support in the law for such a suggestion.

Additionally, there is nothing in the underlying circumstances of the settlement -- that Mr. Wallia received money for stock options as a result of JASTEC's acquisition of LTU -- that serves to confer jurisdiction on this Court in *this* matter. Such a conclusion offends the Constitutional requirement that jurisdiction must conform with "traditional notions of fair play and substantial justice" under International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945) and its progeny. There is simply no reading of the settlement agreement between LTU Technologies, LTU S.A.S and Mr. Wallia that could lead any reasonable person to conclude that as a result of the execution of the release, either JASTEC entity would be required to submit to the Court's jurisdiction in the instant case.

### D.    DISCOVERY RELATIVE TO JURISDICTION

Plaintiff requests invasive discovery regarding issues relative to whether JASTEC International and JASTEC TOKYO are subject to the Court's jurisdiction, without having disputed numerous uncontested statements in the Declarations of Messrs. Kamiyama and Nakatani (which therefore should be treated for the purpose of this motion deemed

12

admitted) or making any other showing of entitlement to such intrusive discovery. For the following reasons, Defendants urge the Court to deny Plaintiff's request.

Specifically, the following facts, set forth in the Declarations of Messrs. Kamiyama and Nakatani are unopposed and, as such, should be deemed admitted:

1. JASTEC International is organized under the laws of the State of Delaware and its office is located in New York City. JASTEC TOKYO is organized under the laws of Japan and its offices are located entirely in Japan.

2. JASTEC TOKYO and JASTEC International:

- Are not registered to do business in the District of Columbia;
- Have no registered agent in the District of Columbia;
- Possess no real property in the District of Columbia;
- Pay no taxes in the District of Columbia;
- Have no employees in the District of Columbia;
- Do not advertise in the District of Columbia;
- Submit no bids or proposals in the District of Columbia;
- Sell no products in the District of Columbia; and
- Do not target a website to residents of the District of Columbia.

3. JASTEC TOKYO and JASTEC International:

- Do not share employees with each other or with either LTU Defendant;
- Do not share offices with each other or with either LTU Defendant;
- Do not share any resources or physical plant with either LTU Defendant;
- Do not share revenue with either LTU Defendant;
- Do not file taxes with each other or with either LTU Defendant;
- Do not engage in any inter-corporate dealings with either LTU Defendant, save for one arms – length consulting contract between LTU S.A.S. and JASTEC International.

As set forth in the Nakatani Declaration, JASTEC International has no direct authority over either LTU entity. If it did, which JASTEC International vehemently

denies, there would be no need for the consulting agreement Defendants disclosed in their initial moving papers.

It is further undisputed that JASTEC TOKYO sells its services entirely within Japan. Its website includes no foreign corporations and it solicits no business within the United States. All of JASTEC TOKYO's marketing efforts are targeted to its Japanese market. Plaintiff has provided no reasonable set of facts, however slim, to suggest JASTEC TOKYO is doing business in the District of Columbia or anywhere in the United States.

In like manner, as set forth in the documents Plaintiff provided to the Court, JASTEC International exits to research and identify opportunities outside of Japan for JASTEC TOKYO to acquire businesses dealing in prepackaged software. In that capacity, JASTEC International operates from its New York City office, as stated by Mr. Nakatani. It does not exist to oversee LTU Technologies or LTU S.A.S., both of which were pre-existing companies with ongoing business prior to their acquisition by JASTEC International. (Nakatani Declaration, ¶¶5, 8-11)

Plaintiffs purported proof that either JASTEC company does business within the District of Columbia with the Ashcroft Group has been shown to be based upon inadmissible hearsay and, as revealed by reference to admissible documents, is untrue. Plaintiff's argument with respect to the Wallia settlement agreement has been shown to be offensive to very basic Constitutional principals of fair play and thus, unavailing. Even more offensive to those principals is Plaintiff's assertion that "[t]here are a number of indicia of JASTEC TOKYO and JASTEC International's activities in the District of Columbia that ADF Solutions cannot bring to the attention of this Court because

14

discovery is necessary to fully develop this information." (Pl. Brief, p. 13)  In light of the fact that Plaintiff did not hesitate to introduce unsubstantiated internet documents that amount to little more than unrestricted "blogs" to support its theories, one is hard pressed to explain why Plaintiff would be reticent to even hint at the information it is holding close to the vest to justify the kind of intrusive discovery it seeks here.

Plaintiff correctly notes that courts approve of "precisely focused discovery" to address jurisdictional matters. Diamond Chemical Company, Inc. v. Atofina Chemicals, Inc., 268 F. Supp. 2d 1, 15 (D.D.C. 2003)  Significantly, however, and contrary to the legal authority it references, the discovery Plaintiff requests is not "precisely focused" but is extremely broad and intrusive and, would be objectionable if requested to support the substantive claims it promotes in its lawsuit.  Additionally, Plaintiff fails to add that the court in Diamond held discovery "can be denied when the plaintiff has failed to represent facts that could establish jurisdiction." Id., at **36.

Plaintiff requests discovery to "investigate the extent of JASTEC International and JASTEC TOKYO's relationship with LTU" in order to promote "alter ego" and "agency" arguments. (Pl. Brief, p. 14)  Significantly, Plaintiff does not state *what* it seeks in discovery and provides no factual information to suggest that Mr. Nakatani and Kamiyama's Declarations are disingenuous or incorrect, thus casting doubt on their contents and justifying discovery.

Plaintiff seeks to "investigate" the receipt by LTU employees of stock options and retirement benefits, although neither has anything to do with the Court's jurisdiction over the JASTEC companies.  Plaintiff seeks discovery regarding the human resources management of JASTEC TOKYO, although it provides no basis to believe that JASTEC

15

TOKYO has any role in the human resources operations of either LTU entity as sworn to before this Court.

Plaintiff seeks broad discovery of "finances, operations and management" of the corporate Defendants with no restrictions at all. Plaintiff's request is astonishing in light of the fact that there is no suggestion or evidence that either LTU Defendant is insolvent or that any Defendant named herein is engaged in any fraudulent activity to shield itself from a possible judgment. Plaintiff further seeks the identity of all common officers, directors and employees of the corporate Defendants, information that is available to the public with a modicum of effort.

Plaintiff seeks to "investigate additional evidence of activities" by the JASTEC companies that would evidence transacting business in the District, despite the clear and uncontested declarations before the Court that categorically state neither company does business in the District. Plaintiff's request should be denied especially in light of the fact that the paltry evidence it did produce to the Court in this respect was either untrue or failed to remotely meet the Constitutional standard under International Shoe, supra., and in light of Plaintiff's equally speculative reliance on undisclosed information to support its request. Plaintiff's reasoning in this regard is circular and nothing more than bootstrapping. Plaintiff has "indicia" it needs discovery which it cannot disclose to the Court without further discovery to develop these indicia.

Plaintiff further seeks the consulting agreement between JASTEC International and LTU S.A.S. Plaintiff's request for the agreement should be denied. The fact that there *is* a consulting agreement indicates that JASTEC International could not possibly have the control over LTU S.A.S. or LTU International Plaintiff argues exists. Finally,

without legal authority, Plaintiff requests information related to "the extent to which JASTEC TOKYO directs and finances LTU's litigation and business activities." (Pl. Brief, p. 14) As to the former, such inquiry would run afoul of the attorney client privilege, at a minimum. As to the latter, the unchallenged affidavits of Messrs. Nakatani and Kamiyama make it clear that the companies keep separate books, pay separate taxes, do not co-mingle funds and are otherwise independent of one another in all respects. Because Plaintiff offers not one shred of evidence and does not even provide a *hint* of information why discovery would reveal otherwise, Plaintiff's request should be denied, as its requests for discovery in their entirety should be denied.

## POINT II

### JASTEC TOKYO WAS IMPROPERLY SERVED AND IS NOT SUBJECT TO THE COURT'S JURISDICTION

Plaintiff relies upon the legal theory of "redelivery" to argue that service upon Mr. Nakatani, who is not a JASTEC TOKYO employee, is not an officer of JASTEC TOKYO and is not authorized to accept service on behalf of JASTEC TOKYO, was good and sufficient service. Plaintiff's argument in this respect is without merit.

Because process was served upon JASTEC International in New York City, Defendants do not dispute that New York law is applicable to whether it was effective service. Under a theory of "redelivery" if "service is made on an unauthorized employee, redelivery within the corporation from the unauthorized employee to an authorized one may render service proper." Jin v. Matuszak, 2006 U.S. Dist. LEXIS 75390, at *21 (E.D.N.Y. 2006). As an initial matter, in the instant case, the process server did not serve an employee of JASTEC TOKYO he served Mr. Nakatani, an employee of JASTEC

17

International, rendering service improper, even when assessed under the theory of "redelivery."

Plaintiff argues, with no factual basis, that Mr. Nakatani's email address reveals Mr. Nakatani as an employee of JASTEC TOKYO. Mr. Nakatani's email address shows only that as an employee of the subsidiary, JASTEC International, his email is delivered to the same domain name as JASTEC TOKYO and forwarded to a separate server operated by Comcast. (Nakatani Declaration, ¶10) Mr. Nakatani's email address does not dilute the veracity of the sworn Declaration of Mr. Kamiyama who stated under oath that Mr. Nakatani is not an officer or agent of JASTEC TOKYO and is not authorized to accept service on its behalf.

However, dispositive of this issue, as set forth in the accompanying Declariont of Mr. Nakatani, is the following: upon receipt of the Summons and Complaint in this matter intended for JASTEC TOKYO, Mr. Nakatani did not send the Summons and Complaint to JASTEC TOKYO. He explicitly stated to the process server he was not authorized to accept service and forwarded the Summons and Complaint to Joseph E. Schuler, Esq., the undersigned counsel for Defendants. Because Mr. Nakatani did not send the Summons and Complaint to JASTEC TOKYO, those documents were not "redelivered" and process is improper in this instance. (Nakatani Declaration, ¶¶5-7)

JASTEC TOKYO's extremely limited participation in the instant litigation – to challenge the Court's jurisdiction – has no probative value relevant to the issue of proper service by "redelivery" in light of Mr. Nakatani's actions sending the Summons and Complaint to counsel and not to JASTEC TOKYO.

Finally, for the reasons set forth above, neither LTU entity is an alter ego of JASTEC TOKYO. Therefore, Plaintiff's argument that LTU's acceptance of service of the Summons and Complaint should be imputed to JASTEC TOKYO must fail. For all the foregoing reasons, the Court should quash the Summons improperly served upon JASTEC TOKYO and dismiss the complaint against it.

## CONCLUSION

Based upon the foregoing facts and legal authority and upon Defendants' original moving papers, Defendants JASTEC TOKYO and JASTEC International respectfully urge the Court to quash the summons to JASTEC TOKYO served on Mr. Nakatani, dismiss Plaintiff's Complaint against each Defendant in its entirety with prejudice, and grant such further relief as this Court deems just and proper.

Dated: September 17, 2007

Respectfully submitted,

/s/ Joseph E. Schuler
Joseph E. Schuler (DC Bar #296269)
JACKSON LEWIS LLP
8614 Westwood Center Drive, Suite 950
Vienna, VA 22182
(703) 821-2189 (telephone)
(703) 821-2267 (facsimile)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ADVANCED DIGITAL FORENSIC SOLUTIONS, INC.,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No.: 1:07-cv-00683 CKK** |
| **LTU TECHNOLOGIES, INC.,** *et al.,* | ) ) | **AFFIDAVIT OF AYA ASANO** |
| **Defendants.** | ) ) ) | |

State of New York    )
                )ss:
County of New York  )

AYA ASANO, being duly sworn, deposes and states as follows:

1.     I am a librarian employed by Jackson Lewis LLP, attorneys for Defendants named herein.

2.     On September 11, I opened the Microsoft Internet Explorer an Internet browser to access the Office of Public Records Lobby Filing Disclosure Program website at the following URL: http://sopr.senate.gov/.

3.     I selected a link with the description "Access the US Lobby Report Images for All Years."

4.     I selected "Client Name" as the criteria to build my query and selected "Go."

5.     I filled in the client name "LTU" and selected "Go."

6.     I received one result and selected the item identified as "LTU Technologies, Inc."

7.     I selected "Registration."

8.     The documents attached hereto as Exhibit A are a true and correct copy of the Registration documents I printed from the website referenced above.

9.     Attached hereto as Exhibit B is a true and correct copy of correspondence dated

October 26, 2005 between The Ashcroft Group, LLC and LTU Technologies.

_____
Aya Asano

Sworn to before me this
17th Day of September, 2007.

_____
Notary Public

MARJORIE N. KAYE, JR.
NOTARY PUBLIC, State of New York
No. 02KA5062658
Qualified in Westchester County
Commission Expires July 1, 2000 2010

# EXHIBIT A

Filing Images

| Clerk of the House of Representatives<br>Legislative Resource Center<br>B-106 Cannon Building<br>Washington, DC 20515 | Secretary of the Senate<br>Office of Public Records<br>232 Hart Building<br>Washington, DC 20510 |
|---|---|

**Secretary of the Senate**
**Received: Dec 30, 2005**

# LOBBYING REGISTRATION

Lobbying Disclosure Act of 1995 (Section 4)

Check if this is an Amended Registration ☐

1. Effective Date of Registration  Dec 30, 2005

2. House Identification Number _____

Senate Identification Number  301196-101

## REGISTRANT

3. Registrant Name: THE ASHCROFT GROUP, LLC
   Address: 1399 NEW YORK AVE NW  SUITE 950
   City: WASHINGTON  State: DC  Zip: 20005

4. Principal place of business (if different from line 3):

5. Telephone number and contact name:
   202942-0202  Contact: MATTHEW REYNOLDS
   E-mail(optional):  matthew@ashcroftgroupllc.com

6. General description of registrant's business or activities:
   Strategic communications

## CLIENT

A Lobbying firm is required to file a separate registration for each client.  Organizations employing in-house lobbyists should check the box labeled "Self" and proceed to line 10.

☐ Self

7. Client name: LTU TECHNOLOGIES, INC
   Address: 1725 I STREET NW, SUITE 300
   City: WASHINGTON  State: DC  Zip: 20006

8. Principal place of business (if different from line 7):

9. General description of client's business or activities:
   Electronic Imagery Analysis

## LOBBYISTS

10. Name of each individual who has acted or is expected to act as a lobbyist for the client identified on line 7.  If any person listed in this section has served as a "covered executive branch official" or "covered legislative branch official" within two years of first acting as a lobbyist for the client, state the executive and/or legislative position(s) in which the person served.

Name: DAY, LORI SHARPE
   Covered Official Position (if applicable): N/A
Name: GAYNOR, WILLIE
   Covered Official Position (if applicable): N/A
Name: WEISS, JULEANNA GLOVER
   Covered Official Position (if applicable): N/A

## LOBBYING ISSUES

11. General lobbying issue areas.  Select all applicable codes listed in instructions and on the reverse side of Form LD-1, page 1:

HOM

12. Specific lobbying issues (current and anticipated):

General assistance in the Homeland Security Sector.

## AFFILIATED ORGANIZATIONS

13. Is there an entity other than the client that contributes more than $10,000 to the lobbying activities of the registrant in a semi-annual period **and**13. Is there an entity other than the client that contributes more than $10,000 to the lobbying activities of the registrant in a

Registrant Name: THE ASHCROFT GROUP, LLC Client Name: LTU TECHNOLOGIES, INC

semi-annual periodin whole or in major part plans, supervises or controls the registrant's lobbying activities?

[X] No, then go to line 14.

[ ] Yes, then complete the rest of this section for each entity matching the criteria above, then proceed to line 14.

# FOREIGN ENTITIES

14. Is there any foreign entity that:
    a) holds at least 20% equitable ownership in the client or any organization identified on line 13; **OR**
    b) directly or indirectly, in whole or in major part, plans, supervises, controls, directs, finances or subsidizes activities of the client or any organization identified on line 13; **OR**
    c) is an affiliate of the client or any organization identified on line 13 and has a direct interest in the outcome of the lobbying activity?

[X] No, then sign and date the registration.
[ ] Yes, then complete the rest of this section for each entity matching the criteria above, then sign and date the registration.

Signature: ON FILE      Date: Dec 30, 2005

Printed Name and Title: JULEANNA GLOVER WEISS · SENIOR ADVISOR

# EXHIBIT B

# THE ASHCROFT GROUP, LLC

November 28, 2005 *PKS*

~~October 26, 2005~~

Mr. Alexandre Winter
Chief Technology Officer
LTU Technologies
1725 Eye Street, NW
Suite 300
Washington, DC 20006

Dear Mr. Winter:

This agreement between LTU Technologies ("Company") and The Ashcroft Group, LLC ("Consultant") relates to consulting services to be rendered by the Consultant, as an advisor to the Company with respect to developing the Company's business and marketing the Company's products.

In consideration of such aforementioned consulting services to be rendered, the Company will pay to the Consultant $10,000 per month, due and payable on the first day of each month, except that the first six monthly fees shall be pro-rated for that month upon execution of this agreement.

In addition to the monthly fee payable hereunder, the Company will additionally compensate the Consultant 4.5% of the Company's total revenues derived from all sales resulting from opportunities registered by Consultant with the Company in writing including modifications, extensions and renewals of such registered opportunities. Consultant will be paid fees quarterly for revenues in that quarter derived from registered opportunities. The fees generated in any given fiscal quarter will be paid no later than the 30th day after the end of such fiscal quarter. Total revenues generated from Consultant registered opportunities will be determined in accordance with U.S. generally accepted accounting principles. Company agrees that Consultant, upon reasonable notice, shall be entitled to inspect the Company's books and records to verify the payments provided for hereunder.

Notwithstanding the foregoing, if this Agreement is terminated without cause or not renewed by the Client, then Consultant shall be entitled to fees for total revenues recognized by the Client during the five years following such termination or expiration of this Agreement attributable to the recognized revenues from overall sales commenced during the period of this Agreement, payable quarterly as provided above.

The Company will reimburse the Consultant for reasonable and customary expenses related to the performance of this agreement within 21 days after written invoice listing expenses incurred.

November 28, 2005 *PKS*

This agreement is effective ~~October 24, 2005~~. The term of the agreement shall be one year from the effective date and shall renew automatically after such initial one year period for like periods until terminated. The agreement may be terminated by either party, for any reason or

no reason, upon thirty days prior notice. In the event this agreement is terminated, the Company will pay the Consultant for all services rendered until the termination date.

The parties acknowledge that the Consultant is subject to legal restrictions that may relate to the performance of this agreement including, but not limited to, 18 U.S.C. 207 (c), and agree that this agreement extends only to those activities permitted by law, regulation and Executive Order.

The Consultant and the Company agree not to disclose information about their operations, clients, or any other information relating to their respective businesses that would be deemed confidential, a trade secret, or other forms of proprietary information. The Consultant shall not, during the period of this agreement or thereafter, disclose to others or use for the benefit of itself or others any such information so long as the Company treats such information as secret or confidential.

The Company may use the name or image of the Consultant or any individual employed by the Consultant in any press release or marketing materials only with the Consultant's prior written consent. The Consultant may not use the Company's name or image in any press releases or marketing materials without the Company's prior written permission.

The Company shall indemnify and hold harmless the Consultant, together with its owners, employees and agents, from all claims, losses, liabilities, damages, suits or actions incurred by the Consultant, including reasonable attorneys' fees and costs of suit, arising from Consultant performing services hereunder, except to the extent the Consultant caused or contributed to such injury or damage by willful misconduct.

In no event shall either party be liable for any consequential, incidental, indirect, exemplary, punitive or special damages, however caused, including loss of profits, revenue, data or use, incurred by either party or any third party, whether under theory or contract, tort (including negligence), warranty or otherwise, even if the other party has been advised of the possibility of such damages.

The Consultant's liability arising from this agreement shall be limited to the compensation paid to the Consultant by the Company.

If any action of law is necessary to enforce or interpret the terms of this agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs, and necessary disbursements incurred both before and after judgment in addition to any other relief to which such party may be entitled. This agreement shall be governed by the laws of the District of Columbia without regard to any otherwise applicable rules of conflicts of laws. The Company (including its affiliates) hereby consents to the jurisdiction of the federal and district courts of the District of Columbia with regard to any dispute concerning this agreement, shall not object to service of process in regard to any such dispute at the above address and shall not object to the laying of venue in any such court in the District of Columbia.

If the foregoing reflects your understanding of the agreement between the Company and the Consultant, please sign below and return a copy to the undersigned.

The Ashcroft Group, LLC

By: _____

Date: 11/7/05

LTU Technologies

By: _____

Date: 11/7/05

UNITED STATES DISCRICT COURT
DISTRICT OF COLUMBIA
------------------------------------------------------------X

ADVANCED DIGITAL FORENSIC
SOLUTIONS, INC.

                 Plaintiff                07 Civ. 00683 (CKK)

   -against-

LTU TECHNOLOGIES, INC., LTU           DECLARATION OF NOBORU
TECHNOLOGIES, S.A., JASTEC            NAKATANI IN SUPPORT OF
INTERNATIONAL, INC. AND               DEFENDANTS' MOTION TO
JASTEC CO., Ltd.,                        DISMISS PLAINTIFF'S COMPLAINT

                Defendants.
------------------------------------------------------------X

Noboru Nakatani, makes the following Declaration under penalty of perjury:

1.    I am the President of JASTEC International, Inc. ("JASTEC International"), a named Defendant in the instant action.

2.    I make this affidavit in support of Defendants JASTEC International Inc.'s and JASTEC Co., Ltd.'s ("JASTEC TOKYO") motion to dismiss Plaintiff's Complaint for lack of jurisdiction.

3.    I make this affidavit to oppose the jurisdiction of this Court and, in so doing, do not waive any jurisdictional defense on behalf of any Defendant named herein or consent to the Court's jurisdiction in this matter on behalf of any Defendant named herein.

4.    I am not an officer or agent of JASTEC TOKYO and am not authorized to accept service on its behalf.

5.    On July 10, 2007, a process server appeared at the office of JASTEC International in New York City and left the Summons in a Civil Case for LTU S.A.S, JASTEC International and JASTEC TOKYO. I signed a receipt only for LTU S.A.S. and JASTEC International, but not JASTEC TOKYO. I specifically told the process

server I was not authorized to accept service on behalf of JASTEC TOKYO. The process server told me that was "Ok" and left the documents with me.

6.    Upon receiving the documents, I sent the documents to Joseph E. Schuler, Esq., of Jackson Lewis LLP, the attorneys for JASTEC International.

7.    I did not send the documents that were left in the JASTEC International office for JASTEC TOKYO by the process server to anyone at JASTEC TOKYO.

8.    The mission of JASTEC International is to research opportunities anywhere in the world for JASTEC TOKYO to acquire companies that create and sell prepackaged software. The majority of my time is spent in that endeavor.

9.    My additional time is spent on administrative tasks for JASTEC International and a very small portion of my time, less than 30-35 hours per month I am engaged in fulfilling the terms of the consulting contract between JASTEC International and LTU S.A.S.

10.    My emails are received at the same domain name as those of JASTEC TOKYO but my emails are forwarded to a server at Comcast that is not shared with JASTEC TOKYO.

11.    My role working with LTU S.A.S. and LTU Technologies is to provide advice broadly related to operations and finances, however, my role is advisory. LTU S.A.S. and LTU Technologies direct their business as their executives and officers see fit.

<br>

Noboru Nakatani

September 17, 2007