**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ADVANCED DIGITAL FORENSIC** ) | |
| **SOLUTIONS, INC.** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **LTU TECHNOLOGIES, INC.** ) | |
| ) | |
| and ) | Civil Action No. 1:07-CV-00683 CKK/AK |
| ) | |
| **LTU TECHNOLOGIES, S.A.** ) | |
| ) | |
| and ) | |
| ) | |
| **JASTEC INTERNATIONAL, INC.** ) | |
| ) | |
| and ) | |
| ) | |
| **JASTEC Co., Ltd.** ) | |
| ) | |
| Defendants. ) | |
| ——————————————————) | |

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Plaintiff Advanced Digital Forensic Solutions, Inc. ("ADF"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 12 and 37(a), hereby moves this Honorable Court for an Order compelling Defendants LTU Technologies, Inc., LTU Technologies, S.A., JASTEC International, Inc., and JASTEC Co., Ltd. (collectively "Defendants"), to provide information and documents promised during depositions and additional documents that were part of the order of Magistrate Judge Kay dated December 20, 2007 ("Order"), but withheld by Defendants. The grounds for this Motion are fully set forth in the accompanying Memorandum of Points and Authorities, incorporated herein by reference.

Plaintiff respectfully requests that this Honorable Court grant this motion and compel further limited jurisdictional discovery from Defendants.


Dated March 19, 2008                          Respectfully submitted,


                                              **FOR THE PLAINTIFF:**


                                              _____*/s/ Walter Steimel, Jr.*_____
                                              Walter Steimel, Jr. (DC Bar #446262)
                                              Mark L. Hogge (DC Bar #404882)
                                              **GREENBERG TRAURIG, LLP**
                                              2101 L Street, NW, Suite 1000
                                              Washington, DC 20037
                                              (202) 331-3100 (telephone)
                                              (202) 331-3101 (facsimile)
                                              SteimelW@gtlaw.com

## RULE 37 CERTIFICATE OF GOOD FAITH

Despite a good faith effort from the undersigned counsel to secure discovery, Defendants failed to produce many documents directly relevant to and required by Magistrate Kay's December 20, 2007 order ("Order").  More importantly, during the depositions permitted under the Order the deponents regularly alluded to documents that had not been produced and repeatedly stated that "they would double check" or "get back to [Plaintiff]" in response to many questions.  Despite repeated requests for this promised information, Defendants have refused to produce anything additional.

The deadline for close of discovery was Monday, February 18, 2008.  On that day, the parties requested and obtained a thirty (30) day extension of the discovery period to work out outstanding discovery disputes.

Plaintiff was permitted two depositions during the discovery period: one of Noboru Nakatani and one of an LTU Rule 30(b)(6) designee.  Plaintiff conducted its deposition of Noboru Nakatani in New York on February 5, 2008, and its deposition of the Rule 30(b)(6) witness, Alexandre Winter, in Washington, D.C. on February 7, 2008.

In response to certain questions posed during the depositions, each deponent indicated that it could not fully respond to these questions and alluded to certain documents that Defendants had not produced pursuant to the Order.  After reviewing the transcripts, on February 14, 2008, counsel for Plaintiff sent counsel for the Defendants a letter requesting the information that was not provided during the depositions as well as additional documents referenced during the depositions, by detailing the information the deponents indicated they would have to provide at a later date.

By letter dated February 22, 2008, Defendants refused to provide further information.

On March 14, 2008, Plaintiff sent a final demand letter, and after a written response from and a teleconference with Defendants on March 17 and March 18 respectively, Plaintiff agreed to revise and reduce its requests in an effort to avoid motions practice.  Today, on the close of discovery, Defendants refused a final time to provide what is required under the Order.

The undersigned's good faith efforts to resolve this discovery dispute have proven unsuccessful, thereby necessitating this motion to compel.


*/s/ Walter Steimel, Jr._____*
Walter E. Steimel, Jr.

## TABLE OF CONTENTS

I.      Background                                                      2

II.     Information Promised During Depositions                         3

III.    Information Withheld During Production,
            But Required Under Order                                    6

IV.     Alternative Relief: JASTEC Defendants Should Be
            Subject to Personal Jurisdiction                           12

V.      Conclusion                                                     15

## TABLE OF AUTHORITIES

### FEDERAL CASES

None

### FEDERAL STATUES

Fed. R. Civ. P. 12                                    1

Fed. R. Civ. P. 37                                    1

*Fed. R. Civ. P. 37                                   13

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ADVANCED DIGITAL FORENSIC SOLUTIONS, INC.** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **LTU TECHNOLOGIES, INC.** | ) | |
| | ) | |
| and | ) | Civil Action No. 1:07-CV-00683 CKK/AK |
| | ) | |
| **LTU TECHNOLOGIES, S.A.** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JASTEC INTERNATIONAL, INC.** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JASTEC Co., Ltd.** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION TO COMPEL DISCOVERY**

Plaintiff Advanced Digital Forensic Solutions, Inc. ("ADF"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 12 and 37, hereby submits this Memorandum of Points and Authorities in Support of its Motion to Compel Discovery. Defendants LTU Technologies, Inc.., LTU Technologies, S.A., JASTEC International, Inc., and JASTEC Co., Ltd. (collectively, "Defendants") have not fully complied with the order of Magistrate Judge Kay dated December 20, 2007 ("Order") by refusing to provide both

1

documents required to be produced under the Order as well as additional documents and information promised during, but not produced after, the depositions taken in this limited jurisdictional discovery matter.

I.    **BACKGROUND**

The Order permitted the parties sixty (60) days to conduct discovery related to personal jurisdiction over JASTEC International, Inc. and JASTEC Co., Ltd. (collectively, "the JASTEC Defendants"). That period expired Monday, February 18, 2008, but the Court extended it for thirty (30) days pursuant to a joint request by the parties. The parties actively engaged in discovery and adhered to the schedule set forth by the Court. Plaintiff was permitted two depositions during the discovery period: one of Noboru Nakatani and one of an LTU Rule 30(b)(6) designee. Plaintiff conducted its deposition of Noboru Nakatani ("Nakatani") in New York on February 5, 2008, and its deposition of the Rule 30(b)(6) witness, Alexandre Winter ("Winter"), in Washington, D.C. on February 7, 2008.

In response to specific questions posed during the depositions, each deponent indicated that he could not fully respond to these questions, but that he would either double check or provide the information later. During the depositions, the parties also discussed certain documents that should be produced by Defendants pursuant to the Order.[1] After reviewing the transcripts, on February 14, 2008, counsel for Plaintiff sent counsel for the Defendants a letter requesting the information that was not provided during the depositions as well as additional documents referenced during the depositions, by detailing the information the deponents indicated they would have to provide at a later date. This letter is attached hereto as Exhibit 1.

---

[1] Defendants appear to be under the impression that they are not required to produce any documents in the possession of either of the JASTEC Defendants other than to provide Nakatani for a deposition. Plaintiff believes that a proper jurisdictional analysis requires production from the entities seeking to avoid jurisdiction, otherwise, such entities can easily evade the jurisdiction of a court by simply stonewalling. Plaintiff requests clear direction

Defendants refused to provide further information pursuant to a letter dated February 22, 2008. *See* Exhibit 2. Plaintiff reiterated its request by letter dated March 14, 2008. *See* Exhibit 3. Defendants responded via letter on March 17, 2008, attached as Exhibit 4, and the parties held a teleconference on March 18, but Defendants continue to refuse to provide the documents and information required under the Order, necessitating the filing of the instant motion. The final refusal is contained in the electronic mail string attached hereto as Exhibit 5.

## II.     INFORMATION PROMISED DURING DEPOSITIONS

During the deposition of Alexandre Winter, LTU Technologies, Inc.'s 30(b)(6) witness, the deponent made numerous references to further information and documents he would need to examine in order to answer specific questions posed by Plaintiff. This additional information is part of that which Defendants refuse to provide to Plaintiff even though it is clearly relevant as Winter testified he would need to review the information or documents in order to answer Plaintiff's counsel's questions.

Winter admitted that he did not know whether LTU, Inc. had turned a profit, a basic fact which would directly support an alter ego or integrated enterprise analysis and about which a 30(b)(6) witness should have been prepared to discuss. *See* Winter Dep. 50:10-51:4, February 7, 2008; Ex. 6 ¶ A.[2]

Winter also could not fully answer questions about the funding sources for LTU, S.A., an answer that is important to demonstrating that neither of the LTU entities are self-sustainable and only exist through continuous funding by the JASTEC Defendants, as is indicated in the deposition transcripts. Winter's complete responses, or responsive documents

---

that relevant documents must also be produced by the JASTEC Defendants.
[2] Due to the confidential nature of the deposition transcripts and subject to the Protective Order , Plaintiff is filing the instant motion along with a Motion to File Exhibits Under Seal. As Plaintiff could not quote directly from the deposition transcripts within its Memorandum, for the Court's convenience, Ex. 6 consists of the referenced

if he cannot recall the underlying details, are essential to both an alter ego or an integrated enterprise analysis. *See* Winter Dep. 64:20-65:20; 67:14-68:22; Ex. 6 ¶ B.

Winter made multiple trips to Japan to meet with JASTEC personnel. *See* Winter Dep. 84:1-85:21; Ex. 6 ¶ C. Defendants produced no records of his visits and Winter himself was unsure of which JASTEC Defendant might have paid for his trips, although he suggested it could be JASTEC International. Further, it was unclear how many trips he really made. The Order encompasses these records, and Winter incompletely addressed them during his deposition. These documents and information are directly relevant to the contacts of the JASTEC Defendants with the forum (general jurisdiction) and work with LTU for marketing matters (specific jurisdiction), and a review of *all* relevant records of visits, payments for expenses and reimbursements will indicate the number of such visits, which also is directly relevant to personal jurisdiction.

Winter admitted that records of receipts and reimbursements probably existed but had not been produced. *See* Winter Dep. 89:6-17; Ex. 6 ¶ D. Defendants have since produced none of them. If either JASTEC Defendant is reimbursing LTU officers for travel expenses to meet with JASTEC, Co., or paying those costs directly or in advance, these are documents directly relevant to the Court's Order and should have been produced, especially when Winter could not even be sure of what exactly might exist with respect to the records, including the total number of trips encompassed by them.

Winter could not testify about the possible existence of e-mail communication with JASTEC, Co. This electronic mail record would bolster the finding of extensive JASTEC Defendant contact with the District. *See* Winter Dep. 106:4-19, Ex. 6 ¶ E.

---

deposition citations each in its own numbered paragraph. The entire transcripts of both Nakatani and Winter will also be attached as Exhibits 8 and 9 for the convenience of the Court

Also during his deposition, Winter stated he had to double check first, the existence of, and second, the terms of, a service agreement with JASTEC, Co.  *See* Winter Dep. 115:19-116:17; Ex. 6 ¶ F.  Without the terms of this agreement, Plaintiff is unable to determine what type of services, consulting or management, might have been contracted for among Defendants.  The Order required the production of the agreement.

With respect to potential contracts and documents surrounding sales of LTU software in Japan, Winter knew next to nothing.  He twice said he would have to reference other documents to respond to questions as he did not know the parties to the contracts or any of the negotiations surrounding possible deals.  JASTEC Defendant sales support for LTU is directly relevant to its contacts with a business in the District.  *See* Winter Dep. 117:10-118:14; Ex. 6 ¶ G.

In reference to another agreement, Winter seemed sure that e-mail traffic surrounding it existed; Plaintiff has no such e-mail communication within the production it received.  This e-mail traffic would serve to prove extensive support by the JASTEC Defendants of LTU activities in the District as well as support alter ego, agency and integrated enterprise analyses.  *See* Winter Dep. 161:17-162:6; Ex. 6 ¶ H.

While Defendants provided some general accounting records of expenses and fees, they did not reference specific trips or identify the flow of funds between LTU and the JASTEC Defendants.  Nor did they provide enough detail for Winter to determine exactly to what they might refer.  *See* Winter Dep. 166:4-167:22; Ex. 6 ¶ I.  Winter suggested he would need to check invoices; Plaintiff does not have any copies of these invoices, nor did Winter provide further information.

Winter could not opine on the financial situation of the LTU Defendants at a particular

point in time, stating he would need to check their situations.  *See* Winter Dep. 176:12-177:1;

Ex. 6 ¶ J.  It is difficult to understand why the CEO of the LTU Defendants (and former CTO)

could not remember pertinent financial details about his company.  The financial situation of

the LTU Defendants and the extent to which they were funded and supported by the JASTEC

Defendants directly addresses contacts in the District as well as alter ego and integrated

enterprise analysis.  This information must be provided pursuant to the Order.

In all cases described above, Winter testified that he would need to check documents

in order to find answers to Plaintiff's questions and in addition, sometimes he simply did not

know the answer.  Defendants are entitled to see the documents he referenced as all are

relevant to a demonstration of contacts between the JASTEC Defendants and the District,

general and specific jurisdiction, and analyses under the alter ego, agency and integrated

enterprise tests for jurisdiction.

## III.  INFORMATION WITHHELD DURING PRODUCTION, BUT REQUIRED UNDER ORDER

It is clear that Defendants withheld documents from Plaintiff during this discovery

period.  Upon taking the depositions, it became obvious that many more relevant documents

responsive to the Order must exist.  Defendants should not be allowed to pick and choose

certain documents that are relevant and leave others out; Defendants need to provide all

relevant documents responsive to each topic identified in the Order.

In addition, it became apparent that while Defendants refused to specifically identify

the sources of the documents they produced, the JASTEC Defendants did not provide any

documents.  It makes no sense that the parties questioning the Court's jurisdiction should be

permitted to escape the provision of relevant documents and Plaintiff requests that the Court

direct the JASTEC Defendants to comply with the Court's Order.

The Court's Order required Defendants to produce a copy of the consulting agreement between the JASTEC Defendants and LTU and LTU's agents (Defendants' Topic 1.a.i., Order at 3). In addition, the Court permitted testimony from Mr. Nakatani regarding his knowledge of the interactions between JASTEC International and LTU (Defendants' Topic 1.b.iii.g.; Order at 4) and the consulting, licensing and developing agreement between JASTEC International and LTU (Defendants' Topic 1.b.iii.d., Order at 4). Mr. Nakatani spoke of his consultant role and corresponding agreement with LTU, S.A. at Nakatani Dep. 125:14-16; 126: 8-9; 126:19-21, Feb. 5, 2008; Ex. 7 ¶ A.[3] It is unclear to Plaintiff whether Mr. Nakatani is referring to a different consulting agreement than the one Defendants did provide Plaintiff.

Within the discussion of Nakatani's consultant role above, Plaintiff's counsel inquired after a policy mentioned in Defendants' document production that could have shed light on the relationship between JASTEC International, JASTEC Co. and LTU with respect to financial resources shared among the companies (Defendants' Topic 1.b.iii.b., Order at 4); the consulting, licensing and developing agreement between JASTEC International and LTU (Defendants' Topic 1.b.iii.d., Order at 4); and the relationship between both JASTEC Defendants and as well as their relations to LTU regarding financial resources shared among the companies (Defendants' Topic 1.b.iv.b., Order at 4). Mr. Nakatani could give no details about this potentially important policy however. *See* Nakatani Dep. 125:14-16; 126:5-127:11; Ex. 7 ¶ B. These documents are relevant to general and specific jurisdiction, and to an analysis under the alter ego and integrated enterprise tests.

During Nakatani's attendance at a board meeting in 2006 (a board meeting at which

---

[3] Due to the confidential nature of the deposition transcripts and subject to the Protective Order , Plaintiff is filing the instant motion along with a Motion to File Exhibits Under Seal. As Plaintiff could not quote directly from the deposition transcripts within its Memorandum, for the Court's convenience, Exhibit 7 consists of the referenced deposition citations from § III, each in its own numbered paragraph. The entire transcripts of both Winter and

two JASTEC Co. employees, including its CEO, were present), the attendees reviewed LTU, S.A.'s financials and LTU, S.A.'s gave a presentation on business strategy. Nakatani admitted that LTU, S.A. used a PowerPoint presentation during these meeting but could not remember if he also received documents. *See* Nakatani Dep. 62:14-63:25; Ex. 7 ¶ C. These documents are relevant to general and specific jurisdiction, and to an analysis under the alter ego and integrated enterprise tests.

Nakatani himself admitted to traveling to the District sixteen to nineteen times between 2004 and 2007. While he did answer questions about these visits, the Defendants provided no supporting records of his travel. In addition, two JASTEC Co. employees, including its CEO, traveled to DC for a board meeting in 2006. Defendants provided no records of their travel either. In addition, both Winter and Mr. Smith traveled to Japan for meetings with JASTEC Co. personnel. While Defendants provided a few records of Smith's travel, they produced none of Winter's travel documents or reimbursement records. Plaintiff is entitled to these documents to further support the extensive travel and contacts of the JASTEC Defendants with the District.

The Court allowed production of documents pertaining to financial records reflecting payments from JASTEC International to LTU and its agents (Defendants' Topic 1.a.iii., Order at 3) and payments, reimbursements or other arrangements by, between or offered by either or both JASTEC Defendants to LTU or any employee or officer of LTU from February 2005 to the present (Defendants Topic 1.a.ix., Order at 3). In addition, the Order required Nakatani to testify about the extent of his presence in the District for business (Defendants' Topic 1.b.ii., Order at 4); payments of any kind by either JASTEC Defendant to LTU (Defendants' Topic 1.b.iii.e., Order at 4); and, a description or summary of the extent of all employees and

---

Nakatani will also be attached as Exhibits 8 and 9, respectively.

representatives of both JASTEC Defendants' presence in the District for business, including all travel to or meeting in DC (Plaintiff's Topic iii., Order at 4).

Defendants' production in these areas was sorely lacking as Plaintiffs have no documents that pertain to Nakatani's sixteen to nineteen trips to DC for business with LTU, Inc. *See* Nakatani Dep. 58:17-59:2; 72:6-14; 72:18-21; Ex. 7 ¶ D. Defendants produced no receipts of payments or reimbursements or financial records pertaining to any of these trips.

While Defendants did produce some records of reimbursement paid to P. Kevin Smith for his trip to Japan to meet with JASTEC Co. representatives (Plaintiff argues even that production was insufficient and limited), they produced nothing of Winter's multiple trips. *See* Nakatani Dep. 74:13-15; 74:19-75:17; Ex. 7 ¶ E (discussing Smith trip); *see also* Nakatani Dep. 80:8-81:6; Ex. 7 ¶ F (discussing Winter trip).[4] In addition, when specifically asked whether he had meetings in Japan with respect to LTU, Inc., he admitted he did, but did not know under which contract those meetings fell. *See* Winter Dep. 84:1-10; Ex. 7 ¶ G. The records of his trips are not only missing from Defendants' production, but also absent is the contract governing them.[5]

Finally, both Winter and Nakatani testified about Mr. Shibayama, CEO of JASTEC, Co., and Mr. Ohta, another JASTEC Co. employee, traveling to the District for a board meeting of LTU, S.A. held at LTU, Inc.'s offices. *See* Nakatani Dep. 62:14-24; Ex. 7 ¶ I; *see also* Winter Dep. 45:10-22; 46:1-14; 78:4-79:1; Ex. 7 ¶ J. Two JASTEC Co.'s employees' presence in the District for a board meeting of one LTU Defendant is highly relevant to the Court's Order. Yet Defendants produced no receipts, records or invoices with respect to this

---

[4] Defendants would also argue that communications and records of phone calls and e-mails surrounding Winter's and Mr. Smith's trips to Japan are relevant to the Court's Order as they would supplement the records of Winter's reimbursement for his travel.

[5] Winter further testified that former CEO of both LTU Defendants, Chahab Nastar traveled to Japan with him as did

travel.

The Court's Order permitted testimony from Winter, the LTU's Rule 30(b)(6) witness, regarding his knowledge of the common business and contracts reflecting this common business conducted in DC by LTU, JASTEC International, and JASTEC Co. (Defendants' Topic 1.c.v.; Order at 4). Winter testified that he communicated with Nakatani several times a month via e-mail, yet Defendants provided none of these communications, nor the content of these communications. *See* Winter Dep. 37:17-38:16; Ex. 7 ¶ K. These documents are required under the Order, are relevant to general and specific jurisdiction, and are relevant to an analysis under the alter ego and integrated enterprise tests.

Other common business would be reflected in communications between Winter and Nakatani regarding Nakatani's consulting duties. *See* Winter Dep. 70:17-71:3; Ex. 7 ¶ L. JASTEC International helped to form financial reports and marketing strategies and Defendants provided no documentation of any of these activities except for the consultant contract itself. These activities support specific jurisdiction as they go to the gravamen of the Plaintiff's Complaint in this case. Winter's and Nakatani's communication with respect to this contract is additionally relevant as evidence of common business conducted in DC.

In addition, the Defendants held another board meeting of LTU, S.A. during one of Winter's trips to Japan. Because they held a strategy meeting about growing LTU's business, it is likely that the parties discussed common business within the District. *See* Winter Dep. 102:11-103:9; Ex. 7 ¶ M. Defendants provided no record of this meeting nor any materials or presentations supplied at it. These records are contemplated under the Order and are relevant to general and specific jurisdiction, and to an analysis under the alter ego and integrated

---

another LTU employee, Frederic Jahard. *See* Winter Dep. 95:21-96:5; 98:10-16 Ex. 7 ¶ H. Defendants produced no records of reimbursement to Mr. Nastar or Mr. Jahard for his trips to Japan.

enterprise tests.

Dr. Winter traveled not only to Japan, but also to Paris and New York City on company business to meet with Nakatani.  *See* Winter Dep. 39:16-19; 40:8-13; Ex. 7 ¶ N.  Not only did the Court provide for Winter to testify about the common business and contracts reflecting this common business conducted *in DC* by LTU, JASTEC International, and JASTEC Co. (Defendants' Topic 1.c.v.; Order at 4), the Court also provided for document production pertaining to financial records reflecting payments from JASTEC International to LTU and its agents (Defendants' Topic 1.a.iii., Order at 3) and payments, reimbursements or other arrangements by, between or offered by either or both JASTEC Defendants to LTU or any employee or officer of LTU from February 2005 to the present (Defendants Topic 1.a.ix., Order at 3).  Defendants did not provide any record of reimbursement or payment with respect to these trips Winter took.

The Court's permitted production of documents consisting of copies of financial records reflecting payments or guarantees from JASTEC International to LTU and its agents as well as records showing payments from LTU to either JASTEC Defendant. (Defendants' Topics 1.a.iii. and iv.; Order at 3).  Winter gave testimony about communications with the LTU Defendants' accountants regarding financial reports generated for LTU, S.A.  *See* Winter Dep. 58:4-59:10; Ex. 7 ¶ O.  Communications with the LTU Defendants' accountants would involve records of payments among all Defendants and Plaintiff is entitled to see those records in support of its arguments in favor of personal jurisdiction.  Winter further testified that many of these records were in the possession of their outside accountants, and that Plaintiff could acquire those records from the accountant.  *See, e.g.*, Winter Dep. 189:5-20, Ex. 7 ¶ P.  Defendants should be ordered to provide these records.

In Defendants' Topic 1.c.vi (Order at 5), the Court's Order allowed Dr. Winter to testify about agreements among LTU and both JASTEC Defendants. Winter admitted that a contract exists among the LTU Defendants and JASTEC Co. regarding software sales in Japan. *See* Winter Dep. 81:7-82:2; Ex. 7 ¶ Q. Plaintiff has not seen this contract. Also relevant to this topic are the agreements surrounding the acquisition of the LTU Defendants by JASTEC, Co. See Winter Dep. 100:4-101:7; Ex. 7 ¶ R. Plaintiff possesses no such agreements nor any of the communications surrounding the negotiations.

It is inconceivable that Defendants have refused, after repeated requests, to provide so many documents relevant to the Court's Order. Not only does it appear that the JASTEC Defendants neglected to participate in this discovery period, but also that Defendants expect Plaintiff to accept this in light of testimony regarding extensive contacts by the JASTEC Defendants in Washington, DC. The LTU Defendants could not have continued to exist without infusions and loans from the JASTEC Defendants. JASTEC employees traveled to DC and LTU employees visited Japan. Deposition testimony demonstrated the interrelated nature of the Defendants; therefore, Defendants should be ordered to produce the proof they withheld.

## IV.    ALTERNATIVE RELIEF: JASTEC DEFENDANTS SHOULD BE SUBJECT TO PERSONAL JURISDICTION

The Defendants, as evidenced above, failed to produce many documents to Plaintiff during jurisdictional discovery. The deponents made these failures even clearer each time one referred to documents he would need to review in order to refresh his recollection and answer the questions posed. Winter, in particular, said he could provide documents and information in response to questions he could not answer; Defendants have refused to produce any of this information or these documents. Plaintiff maintains that Defendants are not in compliance

with this Court's Order and believes that all previous requests made by Plaintiff are directly relevant both to the Order and to the question of jurisdiction.

It is further clear from the excerpts from Winter's deposition that the Defendants did not produce the most knowledgeable Rule 30(b)(6) designee for the LTU Defendants. Winter was unable to answer questions concerning the LTU Defendants' business and relationships with the JASTEC Defendants. He repeatedly referred to a former CEO and current director of one or more of the LTU Defendants', Chahab Nastar, as someone who would know answers. On other occasions, he referenced P. Kevin Smith, the CFO of the LTU Defendants, as a more knowledgeable source. The LTU Defendants should be ordered to produce the most knowledgeable Rule 30(b)(6) witness.

In the designated excerpts for Winter he made numerous statements about "double checking" or "getting back" to Plaintiff regarding his lack of knowledge of the issues about which he should have been prepared to testify. Defendants have also refused to produce either a different Rule 30(b)(6) witness or Winter again for further deposition. Plaintiff has no choice but to file the instant motion.

If the Court does not grant Plaintiff's request to compel further production from Defendants, in the alternative, Plaintiff asks that the Court find the JASTEC Defendants are subject to personal jurisdiction in the District of Columbia. The relief requested by Plaintiff is specifically contemplated under Fed. R. Civ. P. 37(b)(2)(A) and (c), that is, a determination that the designated facts have been established and that the Court's personal jurisdiction over the JASTEC Defendants has been established.

Relief under Fed. R. Civ. P. 37(b)(2)(A) would be consistent with the evidence received to date by the Plaintiff. The LTU Defendants are wholly owned subsidiaries of the

JASTEC Defendants, are funded entirely by the JASTEC Defendants, and managed by the JASTEC Defendants. The relationship among the four interrelated companies is so close and connected that the LTU Defendants essentially operate as divisions of the JASTEC Defendants -- there is no need to pierce a corporate veil as not even a veil exists.

Although much of the relevant information has been withheld, the few documents that were provided and the testimony of the witnesses demonstrated extensive travel and dealings between LTU and the JASTEC Defendants. Nakatani testified that he traveled to LTU, Inc.'s offices five or six times in 2007 and 2006 as well as four or five times in 2005. Nakatani visited the District twice in 2004 upon the invitation of the LTU Defendants' former CEO, Chahab Nastar. During Nakatani's attendance at board meetings at LTU, he was privy to the review of LTU's financial statements as well as business strategy presentations that included plans for both LTU Defendants. Also in attendance at the board meeting in 2006 in DC were two JASTEC *Co.* officers, Mr. Shibayama, CEO of JASTEC, Co., and Mr. Ohta.

Winter confirmed the many visits Nakatani made to the District. In fact, his initial meeting with Nakatani covered subjects such as LTU's customers in the US as well as LTU's technology and products. The relationships among all the Defendants are also confirmed by the many trips Winter and P. Kevin Smith made to Japan to meet with JASTEC, Co. employees. Records of all of these trips are clearly relevant production demanded under the Order.

Even though Winter could not answer all questions about the LTU Defendants' finances, he admitted that LTU, Inc. has never been profitable. Upon JASTEC Co.'s acquisition of the LTU Defendants, it had to provide them with one loan and possibly three capital injections. Without JASTEC Co.'s influx of capital, it is likely the LTU Defendants

would not longer exist due to their lack of profitability.

Furthermore, JASTEC International performs consulting activities for the LTU Defendants. It helped to formulate financial reports and marketing strategies for LTU, Inc. and LTU, S.A.[6] This activity demonstrates specific jurisdiction as the activities complained of in the Complaint are LTU's marketing, misleading advertising and unfair business practices.

In the event the Court denies Plaintiff relief under Fed. R. Civ. P. 37, Plaintiff will address all the evidence supporting a finding of personal jurisdiction over the JASTEC Defendants in detail in its renewed opposition to the JASTEC Defendants' motion to dismiss for lack of personal jurisdiction.

## V.    <u>CONCLUSION</u>

Plaintiff respectfully requests that this Court grant its Motion to Compel Discovery as requested herein. In the alternative, Plaintiff requests that the Court enter an order pursuant to Fed. R. Civ. P. 37(b)(2)(A) and (c), that is, a determination that the designated facts have been established and that the Court has personal jurisdiction over the JASTEC Defendants. Plaintiff also requests attorneys fees and reasonable expenses related to this motion and the related discovery, as provided for in Fed. R. Civ. P. 37(b).

---

[6] It is unfortunate that neither Nakatani nor Winter could fully answer questions about the financial picture of their respective subsidiaries since it is clear all the Defendants' finances are interrelated, and that the JASTEC Defendants

Dated March 19, 2008                          Respectfully submitted,


**FOR THE PLAINTIFF:**


_____ */s/ Walter Steimel, Jr.* _____
Walter Steimel, Jr. (DC Bar #446262)
Mark L. Hogge (DC Bar #404882)
**GREENBERG TRAURIG, LLP**
2101 L Street, NW, Suite 1000
Washington, DC 20037
(202) 331-3100 (telephone)
(202) 331-3101 (facsimile)
SteimelW@gtlaw.com

---

are the sole source of all funding for the LTU Defendants.

# Exhibit 1

# Greenberg
# Traurig

Walter Steimel, Jr.
Tel. 202.452.4893
Fax 202.331.3101
SteimelW@gtlaw.com

February 14, 2008

**VIA FACSIMILE (703) 821-2267**
 **and FIRST-CLASS MAIL**

Joseph Schuler, Esq.
Jackson Lewis LLP
8614 Westwood Center Dr
Suite 950
Vienna, VA 22182

Re:    Advanced Digital Forensic Solutions, Inc. v. LTU Technologies, Inc., et al., No.
       1:07-CV-00683, United States District Court for the District of Columbia

Dear Joe:

        We are in receipt of Plaintiff's Videotaped Depositions of Noboru Nakatani and LTU
Technologies, Inc's 30(b)(6) designee as ordered by the Magistrate's Memorandum Order
dated December 20, 2007.

        While we are still in the process of reviewing the depositions, it has come to our
immediate attention that LTU Technologies, Inc., *et al.* still has failed to produce several
documents to Plaintiff in this jurisdictional discovery process. These failures were made even
clearer by the fact that each deponent referred to documents he would have to review in order
to refresh his recollection. We also remind you that Mr. Winter, in particular, promised to
provide documents and information in response to questions he could not answer, and we have
not been provided with any of these documents or information.

        We believe your clients are not in compliance with the Court's Order. We demand that
LTU Technologies, Inc., *et al.* provide complete documentation to us no later than Sunday,
February 17, 2008. We attach hereto a schedule of the documents and supplemental or
promised information that we believe, at a minimum, must be produced. We cross-reference
the transcripts for your convenience. These are not comprehensive, and we reserve the right to
raise new or different issues either directly with you or with the Court. We believe all are
directly relevant to both the Court Order and the questions of jurisdiction, and many have been
promised to us, but not produced. If your clients do not provide the documents and information
by Sunday, we will move to compel production.

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TAMPA
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance

Greenberg Traurig, LLP | Attorneys at Law | 2101 L Street, NW | Suite 1000 | Washington, D.C. 20037
Tel 202.331.3100 | Fax 202.331.3101

www.gtlaw.com

Joseph Schuler, Esq.
February 14, 2008
Page 2

_____

In addition, we believe that your clients did not produce the most knowledgeable 30(b)(6) designee for LTU. Alexandre Winter was unable to answer important questions relating to LTU's business and relationships with the Jastec entities. Mr. Winter, on numerous occasions, did not know the answers to our questions, and repeatedly referred to Mr. Chahab Nastar as a person who would know the answer. On other occasions, he referred to P. Kevin Smith, the CFO, and other parties as the most knowledgeable sources.

Based upon our examination of Mr. Winter, it is clear that Mr. Nastar should have been produced as LTU's 30(b)(6) designee. As Chahab Nastar failed to officially resign his position as CEO of LTU Technologies, Inc. (please see Winter Exhibit Nos. 24 and 25), and was only replaced as *Director* of LTU Technologies, Inc. (see Winter Exhibit No. 22 and pages 220 through 222 of Winter Deposition transcript), he must be produced as the proper 30(b)(6) designee.

We request that you consent to a thirty (30) day extension of jurisdictional discovery and produce Mr. Nastar to be deposed. If your client refuses to make Mr. Nastar available for deposition, I am prepared to file a motion to compel it. I trust that will not be necessary.

Please feel free to contact me if you have any questions or wish to discuss this further.

Very truly yours,

Walter Steimel, Jr.

WES/mhc

Attachments

## DOCUMENTS NEEDED FROM N. NAKATANI DEPOSITION

| Number | Document Name | Location in Deposition | |
|---|---|---|---|
| 1. | Electronic or hardcopy of Consolidated Monthly Financial Reports | Page 11 | Line 6 |
| 2. | Electronic or hardcopy of R& D Quarterly Reports | Page 28 | Line 7 |
| 3. | Electronic or hardcopy of the February 1, 2008 Report | Page 35 | Line 13 |
| 4. | Electronic or hardcopy of LTU Board Meeting Reports | Page 52 | Line 6 |
| 5. | Electronic or hard copy of receipts or reimbursements for visits to LTU Technologies, Inc. Office ( 5 or 6 different invoices for each year) | Page 58 | Line 17 |
| 6. | Electronic or hardcopy of the Business Strategy Presentation | Page 63 | Line 14 |
| 7. | Intercompany Management Consulting Contract | Page 65 | Line 14 |
| 8. | Electronic or hardcopy of receipts or reimbursements for the Client Conference (2004) | Page 72 | Line 12 |
| 9. | Electronic or hardcopy of receipts or reimbursements for LTU Inc. employees going to Japan | Page 74 | Line 24 |
| 10. | Electronic or hardcopy of receipts or reimbursements for Alexandre Winter's trip to Japan in June 06 for Jastec | Page 81 | Line 16 |
| 11. | A List Customers or Contacts for Japanese Meetings for LTU Companies | Page 92 | Line 18 |
| 12. | Electronic or hardcopy of receipts or reimbursements for N. Nakatani for Interpreting Sales Meetings in Japan for LTU | Page 93 | Line 6 |
| 13. | Electronic or hardcopy of documents used During Board Meeting of LTU SAS in Washington, DC | Page 107 | Line 6 |
| 14. | Electronic or hardcopy of the Comparison Budget and the Realizations Spreadsheets | Page 121 | Line 16 |
| 15. | Electronic or hardcopy of the February 1st Spreadsheet | Page 123 | Line 5 |
| 16. | N. Nakatani Consultant Agreement from LTU SAS | Page 126 | Line 8 |
| 17. | All written communications with Alexandre Winter re LTU Technologies. (Per A. Winter's Deposition) | | |

## DOCUMENTS NEEDED FROM A. WINTER DEPOSITION

| Number | Document Name | Location in Deposition | |
|---|---|---|---|
| 1. | Internal Documents from LTU, Inc. to Jastec | Page 30 | Line 22 |
| 2. | Consolidated Financial Report | Page 32 | Line 17 |
| 3. | Technical Report | Page 33 | Line 3 |
| 4. | List of Contractors for LTU, Inc. | Page 33 | Line 20 |
| 5. | Inter-Corporate Management Contract | Page 38 | Line 7 |
| 6. | Email communication with N. Nakatani | Page 38 | Line 14 |
| 7. | Presentation used in N. Nakatani visit in 2004 | Page 39 | Line 8 |
| 8. | Invoices for travel to have meetings with Mr. Nakatani | Page 40 | Line 8 |
| 9. | **Checking on Sebastien Gilles starting date when he was employed by LTU S.A.S.** | Page 43 | Line 3 |
| 10. | Travel Invoice for Y. Shibayama travel to DC in the Fall of 2006 | Page 45 | Line 16 |
| 11. | Travel Invoices for Board Members to DC in the Fall of 2006 | Page 45 | Line 20 |
| 12. | **Double Checking on Profits/Revenues for LTU, Inc (by year)** | Page 50 | Line 8 |
| 13. | All written reporting communication between Alexandre Winter and LTU SAS employees when he was CTO | Page 52 | Line 18 |
| 14. | Any written communication on Jastec first contact with LTU, Inc in 2004 | Page 55 | Line 16 |
| 15. | All LTU Inc. salespeople communication with LTU's accounting company that is provided to the LTU SAS CFO for financial reports | Page 57 | Line 13 |
| 16. | **Double Checking on Bridge from Venture Capitalist** | Page 65 | Line 11 |
| 17. | All written communication re JII helping formulate financial reports and other market studies | Page 71 | Line 1 |
| 18. | All sales communications between LTU and Tadao Ohta | Page 74 | Line 1 |
| 19. | All written communications between Alexandre Winter and Jastec Japan sales team | Page 78 | Line 6 |
| 20. | Travel invoices for Alexandre Winter's meetings with Jastec Japan sales team | Page 78 | Line 16 |
| 21. | All contracts signed between LTU and Jastec sales team | Page 81 | Line 7 |
| 22. | A list of people in all sales meetings between Tadeo and LTU | Page 84 | Line 6 |
| 23. | **Double Checking on dates Alexandre Winter was in Japan conducting sales meetings for** | Page 84 | Line 8 |

### DOCUMENTS NEEDED FROM A. WINTER DEPOSITION

| Number | Document Name | Location in Deposition | |
|---|---|---|---|
| | LTU, Inc. | | |
| 24. | All electronic or hard copies of trips Alexandre Winter took to Japan for sales team meetings with prospects | Page 86 | Line 8-20 |
| 25. | **Double checking travel dates of Alexandre Winter to Japan since February 2004** | Page 88 | Line 2 |
| 26. | Copy of all sales revenue from the prototype deal and similar deal | Page 88 | Line 13 |
| 27. | **Double checking on the dates of the revenue from the prototype deal and similar deal** | Page 89 | Line 1 |
| 28. | All electronic or hard copy receipts or reimbursements of the three trips Alexandre Winter took to Japan | Page 89 | Line 6 |
| 29. | All electronic or hard copy receipts for the trips N. Nakatani took to Japan for LTU | Page 92 | Line 21 |
| 30. | All electronic or hard copy receipts or reimbursements of trips Chahab took for LTU in 2005 and 2006 | Page 96 | Line 1 |
| 31. | All electronic or hard copy receipts or reimbursements for Frederic Jahard trip to Japan in 2007 | Page 98 | Line 12 |
| 32. | All electronic or hard copy communications between LTU and Jastec in 2004 or 2005 re the acquisition | Page 100 | Line 1 |
| 33. | All electronic or hard copy communications re the Spring 2006 internal meetings in Japan with Jastec. | Page 101 | Line 8 |
| 34. | List of all individuals who attended the two or three internal meetings with Jastec Japan sales team in the Spring of 2006 | Page 101 | Line 12 |
| 35. | All electronic or hard copy communication between LTU and Jastec Co re the Strategy Meeting in Japan (Spring 06) | Page 102 | Line 11 |
| 36. | Any presentations from the Strategy Meeting in Japan (Spring 06) – Electronic or Hard Copy | Page 102 | Line 11 |
| 37. | All electronic or hard copy communication from LTU and Jastec Japan re sales meetings in Japan | Page 105 | Line 12 |
| 38. | All electronic or hard copy communications from C. Nastar to Jastec Japan or Jastec Internation re Strategy Meeting in Japan 2006. | Page 106 | Line 10 |
| 39. | All electronic or hard copy receipts or reimbursements for C. Nastar and A. Winter for travel in 2007 for the Strategy Meeting in Japan. | Page 106 | Line 11 |

**DOCUMENTS NEEDED FROM A. WINTER DEPOSITION**

| Number | Document Name | Location in Deposition | |
|--------|---------------|------------------------|---|
| 40. | All electronic or hard copy communication between Alexandre Winter and Matsumoto San of Jastec Japan | Page 106 | Line 17 |
| 41. | All electronic or hard copy receipts or reimbursements for Kevin Smith's sales team trips with Jastec Japan | Page 110 | Line 21 |
| 42. | All electronic or hard copy communications between Kevin Smith and Jastec Japan sales team. | Page 110 | Line 21 |
| 43. | All electronic or hard copy communications re LTU and Jastec Co re development of software of providing services respect to software | Page 113 | Line 6 |
| 44. | All communications between LTU and Jastec Co. re a grant for a Japanese Search Engine | Page 113 | Line 11 |
| 45. | Double checking on what Agreement allows Jastec Co to use LTU codes | Page 116 | Line 11 |
| 46. | Double checking on actual documents re Jastec Co and LTU that resulted in contracts | Page 117 | Line 17 |
| 47. | Doublec checking to see if Jastec Japan were parties to any agreements with LTU | Page 118 | Line 1 |
| 48. | All electronic or hard copy communications reflecting the negotiations of the contracts between Jastec Co sales force. | Page 118 | Line 11 |
| 49. | Any Electronic or hard copy presentations created by Jastec Co sales team from customers that had interactions with LTU | Page 119 | Line 13 |
| 50. | All electronic or hard copy communications between LTU and Mr. Kamiyama re 2006 and 2007 visits to Japan | Page 133 | Line 16 |
| 51. | All electronic or hard copy communications re Exhibit 7 or 9 of A. Winter's Deposition. | Page 162 | Line 3 |
| 52. | Any and all documents used to verify the accuracy of Exhibit 8 | Page 165 | Line 1 |
| 53. | Double checking on invoice for Production Page D036 | Page 167 | Line 9 |
| 54. | Kevin Smith needs to verify information on Exhibit 17 | Page 189 | Line 1 |
| 55. | LTU Accountants need to verify Exhibit 17 | Page 189 | Line 20 |

# Exhibit 2



**jackson|lewis**

Attorneys at Law

Representing Management Exclusively in Workplace Law and Related Litigation

Jackson Lewis LLP

8614 Westwood Center Drive

Suite 950

Vienna, VA 22182

Tel 703 821-2189

Fax 703 821-2267

www.jacksonlewis.com

ATLANTA, GA
BIRMINGHAM, AL
BOSTON, MA
CHICAGO, IL
CLEVELAND, OH
DALLAS, TX
DENVER, CO
GREENVILLE, SC
HARTFORD, CT
HOUSTON, TX

LONG ISLAND, NY
LOS ANGELES, CA
MIAMI, FL
MINNEAPOLIS, MN
MORRISTOWN, NJ
NEW YORK, NY
ORANGE COUNTY, CA
ORLANDO, FL
PITTSBURGH, PA
PORTLAND, OR

PROVIDENCE, RI
RALEIGH-DURHAM, NC
RICHMOND, VA
SACRAMENTO, CA
SAN FRANCISCO, CA
SEATTLE, WA
STAMFORD, CT
WASHINGTON, DC REGION
WHITE PLAINS, NY

MY DIRECT DIAL IS: 703-821-4314
MY EMAIL ADDRESS IS: SCHULERJ@JACKSONLEWIS.COM

February 22, 2008

**VIA FACSIMILE & U.S. MAIL**

Walter Steimel, Jr.
Greenberg Traurig LLP
2101 L Street, NW
Suite 1000
Washington, DC  20037

Re:    Advanced Digital Forensic Solutions, Inc. v.
LTU Technologies, Inc., et al.

Dear Walter:

We are in receipt of your letter of February 15, 2008 regarding the additional jurisdictional discovery that Plaintiff requests. As an initial matter, although we agreed to Plaintiff's application to extend the jurisdictional discovery period for 30 days in order to permit a considered review of your last-minute, extensive supplemental demands, we did not agree that the Defendants would submit to additional discovery. After review, we believe the additional demands to be without foundation, and respond below specifically to the itemized requests that accompanied your letter.

At the outset, I will note that LTU's Rule 30(b)(6) designee responded fully and within the scope of the topic areas authorized by the Court (and beyond), for an entire day. All of his responses to relevant questions were well within the bounds of LTU's obligation under Rule 30. None of his answers where he was unsure of exact details was either unresponsive or a representation that additional detail would be supplied. To the extent your letter asserts otherwise, we disagree. Further, Defendants do not agree to produce Chahab Nastar for deposition and did not agree to the extension of discovery for that purpose. Such a request is an obvious attempt to exploit the very limited jurisdictional discovery ordered by the Court in this matter to obtain discovery foreclosed to ADF in the Superior Court matter pending between the parties. Specifically, Mr. Nastar is no longer an employee of either LTU entity and has not been in LTU's employ since before the date Plaintiff unilaterally noticed for his deposition.    Mr.



Winter's testimony on this point was unambiguous. Regardless, Mr. Nastar is no longer an employee or officer of any of the Defendants named herein, the Rules do not permit Plaintiff to tell Defendant LTU who to name as its Rule 30(b)(6) witness, and he will not be produced for deposition at your whim. We add that Mr. Nastar, a French citizen and resident, is not personally subject to the jurisdiction of this Court, nor is he under Defendants' control.

Plaintiff's request for production of seventy two (72) additional categories of documents far exceeds the scope of discovery as set forth in the Court's December 20, 2007 Order. None of the requests is within the scope of the focused document production proposed by the parties and ordered by the Court. Many of Plaintiff's requests are for information relative to JASTEC Co., Ltd.'s limited efforts to sell LTU SAS products and services in Japan, obviously beyond the scope of jurisdictional discovery. Plaintiff repeatedly has, and continues to ignore the fact that discovery is limited to whether the Court has jurisdiction over the JASTEC Defendants. It is not within Plaintiff's authority to demand information in excess of that ordered by the Court and Defendants will not produce documents simply because a witness testified that he reviewed it or that he created it in the course of business activities.

**Nakatani Document Requests**

Plaintiff's Requests No. 1 and 3 for Consolidated Monthly Financial Reports are inappropriate to the question of jurisdiction. The uncontested fact *that* JASTEC International, Inc. makes financial reports to JASTEC Co., Ltd. related to JASTEC International, Inc. and the LTU entities' finances is alone sufficient for the purposes of jurisdiction. Plaintiff has articulated no reason it should have highly intrusive access to detailed financial reports of any Defendants who have not submitted to the jurisdiction of the Court or been held to be subject to such jurisdiction.

Plaintiff's Request 2 for Research and Development Quarterly reports is similarly without merit. The nature of Defendants' technology research conducted in France has nothing at all to do with whether either JASTEC Defendant has sufficient jurisdictional contacts with the District of Columbia. Plaintiff's request is clearly an attempt to obtain substantive discovery of its claims and defenses, real and imagined, pending before other courts.

Mr. Nakatani testified that he makes reports from time to time to JASTEC Co., Ltd. from his office in New York. None of these reports comes to bear on whether either JASTEC entity is conducting business in Washington, therefore Defendants decline to provide documents responsive to Plaintiff's Request 3.

Plaintiff's request for LTU Board Meeting minutes is outside the scope of jurisdictional discovery. Both LTU entities accept they are subject to the Court's jurisdiction, therefore, there is absolutely no reason to demand their Board Meeting minutes. For the same reason, Plaintiff's request for the business strategy of LTU SAS is outside the scope of jurisdictional discovery relative to the JASTEC entities.



Plaintiff has requested receipts for reimbursements for visits to LTU Technology's office by Mr. Nakatani (Request 4). Again, the fact of his visit and not its expense details is germane to the issue of jurisdiction therefore Defendants object to Plaintiff's request and decline to provide such documentation. For the same reasons, Defendants object to Plaintiff's requests 8, 9, 10 and 12. Regarding Request No. 8 the date of the client conference, 2004 is outside the time frame contemplated in the Court's Discovery Order.

Plaintiff is in possession of the Inter Management Consulting Contract (Request 7) and the contract between JASTEC International and LTU SAS (Request 16) previously provided with Defendants' original jurisdictional discovery production.

Plaintiff's Request 11, for a list of Japanese customers for meetings in Japan, has nothing to do with personal jurisdiction in the District of Columbia, as all of the customers referenced therein are in Japan. Therefore Defendants object to the request.

Plaintiff's Request 13 for documents used during the LTU SAS Board Meeting held in Washington, D.C. is not germane to the issue of jurisdiction. Only the fact *of* the meeting itself is germane, both LTU companies concede jurisdiction and Plaintiffs have taken all relevant discovery on that issue otherwise.

For the same reasons that Defendants object to Plaintiff's request for discovery of detailed financial information as set forth above, Defendants also object to Plaintiff's request of comparison budgets and spreadsheets (Requests 14 and 15). Finally, there is no justification under the limited discovery Order to request all written communications between Noboru Nakatani and Alexandre Winter (Request 17), other than to attempt to obtain substantive discovery relevant to the related litigation pending in Superior Court. We remind you that Plaintiff's prior attempt to persuade the Court to order such broad discovery relative to jurisdiction was rejected in the first instance.

**Winter Document Requests**

Defendants object to Request 1 related to Mr. Winter's testimony as the request is not reflected in the testimony and the request is unclear. In fact, this misplaced request suggests to us that Plaintiff prepared its requests without any specific purpose and instead simply searched the transcript for any appearance of the word "document(s)" and added that cite to the list. To respond to a theme that runs through most of the Winter requests, the fact that you sought by deposition information of no relevance to the sole issue before the Court does not open the door to expanding discovery or make the original question and answer relevant.

Defendants object to Request 2 for financial reports for the two LTU entities, both of which concede the Court's jurisdiction. Therefore, the request is for documents that are not relevant to the issue of jurisdiction over JASTEC entities.



Defendants object to Request 3 for the internal report of the LTU technical team referenced in Mr. Winter's deposition. The report is not relevant to the issue of jurisdiction over either JASTEC entity.

Defendants object to Request 4 for a list of Contractors for LTU, Inc. LTU, Inc.'s contractors are not relevant to the issue of jurisdiction over either JASTEC entity and Plaintiff's request is an attempt to obtain substantive discovery relative to its claim herein by means of the limited jurisdictional discovery approved by the Court.

Defendants previously provided a copy of the Inter Corporate Management Contract (Request 5).

Defendants object to Plaintiff's Request 6 for emails between Mr. Nakatani and Mr. Winter (see above, Response to Request 17).

Defendants object to Plaintiff's Request 7. As stated above, the fact of Mr. Nakatani's visit to the District of Columbia is relevant to jurisdiction. The content of the meeting prior to the acquisition of LTU SAS is not. Furthermore, the request for information from 2004 is outside the time frame for jurisdictional discovery.

Defendants object to Plaintiff's Request 8. Mr. Winter's travel expenses to New York or Japan is not relevant to whether either JASTEC entity is "present" in the District of Columbia for jurisdictional purposes.

Defendants object to Plaintiff's Request 9. Mr. Winter's testimony reflects Mr. Gilles has never been employed by either JASTEC entity. The only reference to him is that until recently he was employed by LTU SAS, a fact providing no justification for additional information about him relative to the jurisdiction of the JASTEC entities.

Defendants object to Plaintiff's Requests 10, 11, 20, 28, 29, 30, 31, 39, and 41 for receipts for travel expenses. Such documentation is not relevant to whether either JASTEC entity is subject to the Court's jurisdiction.

Defendants object to Plaintiff's Request 12 for information relative to profit and revenues of LTU, Inc. LTU, Inc. is subject to the Court's jurisdiction. It's profit or revenue has nothing to do with whether either JASTEC entity is subject to the Court's jurisdiction.

Similarly, Mr. Winter's communications with employees of LTU SAS does not establish contacts between either JASTEC company and the District of Columbia. Therefore, Defendant objects to Request 13.

Plaintiff's Request 14 for written communication regarding the "first contact" between JASTEC International and LTU, Inc. in 2004 is similarly without relevance to the issue of jurisdiction. Not only does such communication pre-date ownership of LTU SAS by JASTEC,



Attorneys at Law

Walter E. Steimel, Jr., Esq.
Greenberg Traurig, LLP
February 22, 2008
Page 5

and so, falls outside the discovery Order, but it does not establish whether JASTEC has jurisdictional contacts in the District of Columbia.

Internal accounting records between LTU, Inc. and its accountants and LTU SAS reflecting sales are not germane to jurisdiction over the JASTEC entities. Therefore Defendants object to Request 15. Financial records relative to venture capital firms' investments in 2000 in LTU SAS (Request 16) are not relative to whether the JASTEC entities are subject to the Court's jurisdiction, thus Defendants object to Request 16.

Defendants object to Plaintiff's Request 17 because Mr. Winter's testimony does not reflect the existence of any documents nor does his testimony reflect information relevant to jurisdiction of JASTEC. Furthermore, Mr. Nakatani testified that he performed all services for LTU in New York and his contract to provide services is with LTU SAS.

Defendants object to Plaintiff's Request 18 for sales information between LTU and Mr. Ohta. To the extent he has any connection with the LTU defendants, Mr. Ohta works exclusively in Japan in an effort to promote sales in Japan of LTU SAS products. There has been no testimony or information otherwise, therefore, Mr. Ohta's communications with Mr. Winter are not relevant to whether the JASTEC entities are subject to the Court's jurisdiction. Similarly, all efforts of the JASTEC sales team in Tokyo relative to the LTU defendants are for sales on behalf of LTU SAS in Japan, as were Mr. Winter's trips to Japan, therefore Defendants object to Plaintiff's Request 19, 21, 22, 23, 24 (additionally, Defendants object to Request 24 because it is unintelligible), 25, 26, 27, 33, 34, 35, 36, 37, 38, 40, 42 (Mr. Nakatani testified that Mr. Smith's purpose travelling to Japan was to promote sales in Japan), 43, 44, 45 (Mr. Winter's testimony is that the agreement referenced in the Request 45 was for use of LTU SAS servers in Paris in support of sales of LTU SAS products in Japan, having nothing to do with the District of Columbia), 46 (contracts referenced were made and executed in Japan or refer to LTU SAS customers in Japan), 47, 48, 49, 50, 51, and 52, as irrelevant. Defendants' objections set forth above are based upon the fact that all of the Requests are for information about JASTEC Co., Ltd.'s efforts to assist LTU SAS to sell its products and services in Japan.

Defendants object to Plaintiff's Request 32. Communications between JASTEC and LTU regarding the acquisition of a French company by a Japanese company are not relevant to the jurisdiction of the District of Columbia court over either company and are not within the scope of the Court's Order.

Defendants object to Plaintiff's Request 53. Mr. Nakatani went into detail regarding payments from LTU Technologies to JASTEC International, Inc. for Mr. Nakatani's consulting services. Further clarification or "checking" is overly burdensome and not required under the discovery Order.

Defendants object to Plaintiff's Request 54 and 55. The document at issue speaks for itself and the testimony reflects it is a record of payments from LTU Technologies, Inc. to the Ashcroft Group. Further clarification or "checking" is overly burdensome and not required under the discovery Order.



Walter E. Steimel, Jr., Esq.
Greenberg Traurig, LLP
February 22, 2008
Page 6

We have given your supplemental requests consideration, as you requested. As set out above, we conclude that each request exceeds the bounds of the Court's order and is otherwise not sufficiently relevant to personal jurisdiction over the JASTEC entities. We are available to discuss this matter at a mutually convenient time.

Very truly yours,

Joseph Schuler

cc:    John Snyder, Esq.
       Marjorie Kaye, Jr.

# Exhibit 3

# Greenberg Traurig

Walter Steimel, Jr.
Tel. 202.452.4893
Fax 202.331.3101
SteimelW@gtlaw.com

March 14, 2008

**VIA E-MAIL and FIRST-CLASS MAIL**

Joseph Schuler, Esq.
Jackson Lewis, LLP
8614 Westwood Center Drive
Suite 950
Vienna, VA 22182

        Re:    Outstanding Items from Federal Jurisdictional Discovery

Dear Joe:

We are in receipt of your letter dated February 22, 2008 in which you object to the additional discovery we requested after taking the depositions of Alexandre Winter and Noboru Nakatani. I apologize for my short delay in responding, however, I was out of the country and then had a medical emergency that required a visit to the hospital.

Needless to say, we disagree with your objections. It is apparent that your clients did not deliver all of the documents required under the Magistrate's Order, and that your client's Rule 30(b)(6) witnesses were unprepared. If you do not produce all of the documents identified in our previous correspondence by the close of business on Monday, March 17, 2008, we will file a Motion to Compel with Magistrate Judge Kay. We may also seek further depositions as well as the costs associated with obtaining this additional discovery from your clients.

What follows is a list of deposition page and line numbers from Alexandre Winter's deposition in which he makes reference to "double checking" items or "getting back" to us:

    42:18 - 43:10
    50:10 - 50:21
    64:20 - 65:20
    67:14 - 68:22
    84:1 - 84:19
    85:1 - 85:21
    88:18 - 89:5
    89:6 - 89:22
    106:4 - 106:19
    115:19 - 116:17

Joseph Schuler, Esq.
March 14, 2008
Page 2

---

     117:10 - 118:14
     161:17 - 162:6
     166:4 - 167:13
     172:11 - 172:19
     176:12 - 177:1

     We have not received any of the documents or information that your witness committed to providing after the deposition. You can either agree that the overwhelming evidence supports jurisdiction over both Jastec entities (and we note that Jastec International, Inc, has consented to jurisdiction in California), or you can produce the additional information by close of business Monday. You and your clients have had at least three (3) weeks to contemplate our demand and review the deposition transcripts.

     If you do not produce all of the documents identified on the pages above by the close of business on Monday, March 17, 2008, we will file a Motion to Compel.

     Thank you for your prompt attention to this matter.

               Very truly yours,

               Walter Steimel, Jr.

cc:   Marjorie Kaye, Jr, Esq.
      Mark Hogge, Esq.

# Exhibit 4



Representing Management Exclusively in Workplace Law and Related Litigation

Attorneys at Law

**Jackson Lewis LLP**
8614 Westwood Center Drive
Suite 950
Vienna, VA 22182
Tel 703 821-2189
Fax 703 821-2267
www.jacksonlewis.com

| | | |
|---|---|---|
| ATLANTA, GA | LOS ANGELES, CA | PORTLAND, OR |
| BIRMINGHAM, AL | MIAMI, FL | PROVIDENCE, RI |
| BOSTON, MA | MINNEAPOLIS, MN | RALEIGH-DURHAM, NC |
| CHICAGO, IL | MORRISTOWN, NJ | RICHMOND, VA |
| CLEVELAND, OH | NEW ORLEANS, LA | SACRAMENTO, CA |
| DALLAS, TX | NEW YORK, NY | SAN FRANCISCO, CA |
| DENVER, CO | ORANGE COUNTY, CA | SEATTLE, WA |
| GREENVILLE, SC | ORLANDO, FL | STAMFORD, CT |
| HARTFORD, CT | PHILADELPHIA, PA | WASHINGTON, DC REGION |
| HOUSTON, TX | PHOENIX, AZ | WHITE PLAINS, NY |
| LONG ISLAND, NY | PITTSBURGH, PA | |

MY DIRECT DIAL IS: 703-821-4314
MY EMAIL ADDRESS IS: SCHULERJ@JACKSONLEWIS.COM

March 17, 2008

**VIA E MAIL & U.S. MAIL**

Walter Steimel, Jr.
Greenberg Traurig LLP
2101 L Street, NW
Suite 1000
Washington, DC  20037

Re:  Advanced Digital Forensic Solutions,
Inc. v. LTU Technologies, Inc., et al.

Dear Walt:

We are in receipt of your letter of Friday, March 14, 2008 sent at 7:35 p.m. by e-mail requesting additional documents relative to jurisdictional discovery to be delivered by the close of business today, March 17, 2008.  While we appreciate the personal circumstances you set forth in your letter, Defendants will produce no additional documents as requested nor will they agree to additional depositions.  I hope you will appreciate that I was unable to respond to your letter before now because we were engaged in completing our response to ADF's summary judgment motion in the Superior Court action, due today because you refused my request for a two week consent extension to the deadline even though I was in trial all of last week.

As you know, On February 18, Plaintiff requested (and was granted, with Defendants' consent) an extension of the jurisdictional discovery period until March 19, 2008.  This extension was precipitated by Plaintiff's eleventh hour request for additional discovery dated February 15, 2008, the end of the original limited discovery period.  In keeping with the court's directive to complete jurisdictional discovery quickly and the limited nature of our consent to the thirty-day extension to permit prompt review of Plaintiff's excessive demands, we did our part by responding on February 22 in considerable detail to Plaintiff's demand for over 70 documents and for additional depositions, setting forth the reasons why they are objectionable.  In this regard, we completed our review of the excessive demands in three days, and responded promptly.  It is Plaintiff and its litigation team who sat on our response for three weeks, failed to take up the offer in my February 22 letter to engage in further discussion of counsel if you disagreed with our position, still have not justified at any level how these further demands are in



Attorneys at Law

disagreed with our position, still have not justified at any level how these further demands are in any way warranted by the court's order or the matters at issue, and instead waited until after close of business on Friday to send a request that is, in essence, nothing more than a repeat of your February 15 letter. In sum, Plaintiff has done precisely nothing with the additional time allotted to it by the court.

I will further note my specific disagreement that Mr. Winter (or LTU) "committed" to providing any further documents or information. As set forth in my letter, nothing more is due. I will also note my specific disagreement that JASTEC International "consented to jurisdiction in California." As you well know, we agreed to accommodate you by accepting service of Mr. Wallia's baseless cross-complaint. If you contend that consent to service is the same as consent to personal jurisdiction, then please consider our accommodation and consent to be withdrawn.

In our view, the majority of these new discovery demands and as well the bulk of the deposition questions were not directed to the narrow jurisdictional issue at all, but are instead a back-door attempt to engage in unilateral discovery in support of ADF's efforts to secure summary judgment in the Superior Court case, having effectively deadlocked mutual discovery in that proceeding by failing to cooperate and forcing protracted motions practice. Aside from the lack of merit to the February 15 demands, we do not believe the court should allow itself to be co-opted into Plaintiff's tactical gamesmanship.

We are available to discuss this matter at a mutually convenient time.

Very truly yours,

Joseph Schuler

cc:    John Snyder, Esq.
       Marjorie Kaye, Jr.

# Exhibit 5

**Steimel, Walt (Shld-DC-TelCom)**

| | |
|---|---|
| **From:** | Schuler, Joseph E. (DC) [SchulerJ@jacksonlewis.com] |
| **Sent:** | Wednesday, March 19, 2008 11:42 AM |
| **To:** | Steimel, Walt (Shld-DC-TelCom) |
| **Cc:** | Hogge, Mark L. (Shld-DC-IP/Tech/LT); Watson, Lorelyn D. (Atty-DC-EmpLaw); Kaye, Marjorie (NYC); Harris Coleman, Michelle (Secy-DC-TelCom) |
| **Subject:** | RE: federal documents |

Walt,

Upon further review of your markup copy of the February 14 request, we stand by our original position as set out in my detailed letter to you of February 22. As I indicated in that letter and again in our brief phone call yesterday, we do not consider any of the requests to have merit. I will not here restate our position in full, but in the main these requests are either not relevant to the inquiry before the court (in addition to being beyond the respective scope of the documents requests or deposition areas, as the case may be), or they simply rehash questions that were asked and answered during the two full-day depositions you conducted.

Although you have eliminated a handful of the demands, the vast majority remain, and only a few of them relate to the expense receipts we discussed yesterday. By my count, you have left on the table 38 new/additional document requests, of which only 9 seek copies of expense receipts. (My discussing receipts in no way changes our view that copies of receipts for a handful of trips are not the focus of the court's inquiry, as opposed to the purpose of the trips which is fully on the record, nor encompassed within the agreed/ordered document production). The 38 requests include such matters as "all communications," which was expressly rejected by the Court in its December order.

I will further note that several of your request ask for contracts that were produced as part of our pre-deposition production. While these contract are, of course, within the scope of the court's order, there is no basis for a further demand or a motion because you have them.

Likewise, and as expressed in my February 22 letter, the renewed request to secure more information from Mr. Winter is without basis. He and LTU did not promise to get back or to supplement anything, and his answers on any matter fairly within the scope of the topic areas specified by the court were complete. Further, most of the passages that you have identified as incomplete were, in fact, answered during the deposition or else (in a couple of instances) depend upon information that belongs to JASTEC, not LTU.

In sum, our position remains that jurisdictional discovery in this matter pursuant to the Court's order is complete and a motion to compel is without proper basis.

Regards,

Joe Schuler
jackson|lewis
DC Region Office
Direct Dial: (703) 821-4314
E-mail: schulerj@jacksonlewis.com

Confidentiality Note: This e-mail, and any attachment to it, contains privileged and confidential information intended only for the use of the individual(s) or entity named on the e-mail. If the reader of this e-mail is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that reading it is strictly prohibited. If you have received this e-mail in error, please immediately return it to the sender and delete it from your system. Thank you.

-----Original Message-----
From: SteimelW@gtlaw.com [mailto:SteimelW@gtlaw.com]
Sent: Tuesday, March 18, 2008 5:01 PM

To: Schuler, Joseph E. (DC)
Cc: hoggem@gtlaw.com; WatsonL@gtlaw.com; Kaye, Marjorie (NYC); HarrisColemanM@gtlaw.com
Subject: RE: federal documents

Joe,

While we have eliminated many of our original requests, we do expect copies of all trip
expenses, whether reimbursed or paid directly, and copies of documents exchanged at
certain key meetings involving attendance by Jastec persons in DC, LTU persons in Japan,
etc.  We have also tagged the items in the transcript where Alexandre Winter promised to
"get back to us" or double check his response, or refer to documents we have not seen.
So, our request is not just expense reports for trips, but we have limited our requests.

Given the detail behind our requests -- the references to transcript cites and so forth --
I can appreciate where you may need more time than was available today.

As I appreciate your time crunch, we can consent to waiting until tomorrow morning -- mid
morning or so -- for your response.  As long as we can have your response by 10 or 11 we
will have time to decide whether to agree to accept the documents that you can provide, or
move forward with a motion.

Thank you

Walt

-----Original Message-----
From: Schuler, Joseph E. (DC) [mailto:SchulerJ@jacksonlewis.com]
Sent: Tuesday, March 18, 2008 4:52 PM
To: Steimel, Walt (Shld-DC-TelCom)
Cc: Hogge, Mark L. (Shld-DC-IP/Tech/LT); Watson, Lorelyn D.
(Atty-DC-EmpLaw); Kaye, Marjorie (NYC)
Subject: RE: federal documents


Walt,

I know that you had hoped to get the revised list to me shortly after
our call, but by the time your e-mail arrived, I was already into a
series of scheduled meetings and I unable to give even cursory review
until now.  From my limited review, it appears to me that with respect
to the February 14 document request, you have tagged many more documents
and classes of documents than just the expense reports for trips.  Have
I understood the attachment correctly?  If so, this is a different and
much broader request than we discussed this morning, and we will have to
give it closer attention.  I am on my way out to meetings and cannot
manage that process today.  I will let you know our position tomorrow
morning.

If instead I am misreading the attachment and the focus (with respect to
the February 14 document portion) is still limited to copies of trip
expenses, then please let me know this evening and include Maggie Kaye
on your correspondence.  If so, I will still endeavor to confirm our
position today.

Joe

-----Original Message-----
From: SteimelW@gtlaw.com [mailto:SteimelW@gtlaw.com]
Sent: Tuesday, March 18, 2008 12:47 PM
To: Schuler, Joseph E. (DC)
Cc: hoggem@gtlaw.com; WatsonL@gtlaw.com
Subject: FW: federal documents

Joe,

As we discussed I've gone through the attachments to our February 14
letter and the items listed in our March 14th letter, and have marked
out a number of requests in an attempt to narrow the scope of our

request.  Where possible I have cross referenced the March 14 letter
requests to the Winder chart from February 14; please note that it
contains three additional items from the transcript.  We have marked out
items on the March 14 letter to cross reference deletions on the
February 14 chart to make things easier for you.

Please let me know if you have questions about any of the specific items
-- some may be redundant because various specific receipts were
sometimes referred to by both Nakatani and Winter.  We have kept in all
of the transcript references for your ease of reference.

As a final note, did you submit errata sheets for the depositions?  We
did, but had no indication that your office did as well.  Our errata was
based on a real time review of the video with the transcripts, and
should be reflected in the final transcripts when we receive them.

Thank you, and we look forward to hearing from you soon, and in time for
us to determine whether a motion to compel will be necessary.

Walt


--------------------------------------------------------------------
--
    Tax Advice Disclosure: To ensure compliance with requirements
imposed by the IRS under Circular 230, we inform you that any U.S.
federal tax advice contained in this communication (including any
attachments), unless otherwise specifically stated, was not intended or
written to be used, and cannot be used, for the purpose of (1) avoiding
penalties under the Internal Revenue Code or (2) promoting, marketing or
recommending to another party any matters addressed herein.

    The information contained in this transmission may contain
privileged and confidential information. It is intended only for the use
of the person(s) named above. If you are not the intended recipient, you
are hereby notified that any review, dissemination, distribution or
duplication of this communication is strictly prohibited. If you are not
the intended recipient, please contact the sender by reply email and
destroy all copies of the original message. To reply to our email
administrator directly, please send an email to
mailto:postmaster@gtlaw.com.

--------------------------------------------------------------------
--


From: STEIMELW [mailto:STEImelw]
Sent: Tuesday, March 18, 2008 12:41 PM
To: STEIMELW
Subject: federal documents


-----Original Message-----

# Exhibit 6

**Pursuant to the Protective Order, Exhibit 6 will be filed under seal with this Court in paper format.**

# Exhibit 7

**Pursuant to the Protective Order, Exhibit 7 will be filed under seal with this Court in paper format.**

# Exhibit 8

**Pursuant to the Protective Order, Exhibit 8 will be filed under seal with this Court in paper format.**

# Exhibit 9

**Pursuant to the Protective Order, Exhibit 9 will be filed under seal with this Court in paper format.**