# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ADVANCED DIGITAL FORENSIC** | ) | |
| **SOLUTIONS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 1:07-cv-00683 CKK** |
| | ) | |
| **LTU TECHNOLOGIES, INC.,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Joseph E. Schuler (DC Bar #296269)
Marjorie Kaye, Jr. (*Pro Hac Vice* NY Bar#2395234)

JACKSON LEWIS LLP
8614 Westwood Center Drive
Suite 950
Vienna, VA 22182
(703) 821-2189

ATTORNEYS FOR DEFENDANTS
LTU TECHNOLOGIES, INC., *ET. AL.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

I. THE PARTIES' CONDUCT OF DISCOVERY TO DATE ...................................1

   A. Discovery Activities from December 20, 2007 through February 19, 2008 .......................2

      1. Document Production .....................................................................................2

      2. Depositions ....................................................................................................5

   B. Discovery Activities from February 20, 2008 through March 19, 2008 .............................6

II. PLAINTIFF'S REQUESTS TO EXPAND THE SCOPE OF DISCOVERY AND TIME TO COMPLETE DISCOVERY .....................................................................8

   A. Information "Promised" During Depositions .....................................................................8

   B. LTU Financial Information ................................................................................................9

   C. Mr. Winter's Travel ..........................................................................................................10

   D. Mr. Nakatani's Travel .......................................................................................................11

   E. Agreements Among Defendants ........................................................................................12

   F. Sales in Japan ....................................................................................................................12

   G. The JASTEC Defendants' Document Production .............................................................13

III. JURISDICTIONAL DISCOVERY SUPPORTS DISMISSAL OF THE JASTEC DEFENDANTS ...................................................................................................13

IV. PLAINTIFF'S REQUESTS FOR RELIEF ........................................................15

   A. Additional Discovery Is Unwarranted .............................................................................15

   B. Finding the JASTEC Defendants are Subject to the Court's Jurisdiction is not Supported by the Facts or Warranted as a Sanction for Defendants' Conduct in Jurisdictional Discovery........................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Artis v. Greenspan, 223 F. Supp. 2d 149, 2002 U.S. Dist. LEXIS 18078 (D.D.C 2002) ........... 12

Compagnie Des Bauxites De Guinee v. L'Union Atlantique S.A. D'assurances, 723 F.2d 357 (3d Cir. 1983)................................................................................................................ 16

*Diamond Chemical Company, Inc. v. Atofina Chemicals, Inc., 268 F. Supp. 2d 1 (D.D.C 2003) ................................................................................................................................. 15

Doe v. Unocal Corp., 248 F.3d 915, 2001 U.S. App. LEXIS 7691 (9th Cir. 2001).................... 14

United States v. Bestfoods, 524 U.S. 51, 118 S.Ct. 1876 (1998) ................................................ 14

**Rules**

Federal Rules for Civil Procedure Rule 30 (b)(6)........................................................................ 5, 8

Federal Rules of Civil Procedure Rule 37(b)(2)(A) and (C) ....................................................... 16

## PRELIMINARY STATEMENT

Defendants JASTEC Co., Ltd. ("JASTEC Tokyo") and JASTEC International, Inc. ("JASTEC International" or "JASTEC New York") by and through their undersigned attorneys, hereby submit their Memorandum of Law in Opposition to Plaintiff's Motion to Compel Discovery.[1]

Plaintiff alleges Defendants have withheld relevant information and failed to comply with this Court's December 20, 2007 Order providing for limited discovery on the issue of the jurisdiction of the two JASTEC Defendants (the "Order"). Plaintiff's allegations are a not a fair statement of the parties' conduct during jurisdictional discovery and demonstrate Plaintiff's lack of understanding of the scope of that discovery. Defendants have fully complied with the Order, and on close review, Plaintiff's Motion to Compel is instead a motion to revisit the Order to expand its scope. Furthermore, Plaintiff has abrogated its responsibility to timely complete discovery by squandering the 30 day extension of the discovery period this Court previously granted at Plaintiff's request. By the instant motion, Plaintiff seeks to save itself from its own neglect at Defendants' expense. For the following reasons, Plaintiff's motion should be denied.

## I.    THE PARTIES' CONDUCT OF DISCOVERY TO DATE

The Order allowed Plaintiff sixty (60) days to take limited and very focused discovery to determine whether JASTEC Tokyo and JASTEC New York are subject to personal jurisdiction in the District of Columbia. At the outset of jurisdictional discovery the parties were unable to reach agreement on a plan, and Plaintiff made specific requests to the Court concerning the proposed scope of discovery, expanding "upon the Defendants' proposed plan." (Order, pp. 1-2) The Court considered these requests, ordered the production of specific documents or categories of documents, and set out specific topics for deposition testimony (based upon topics proposed

---

[1] Defendants do not oppose Plaintiff's Motion to File Exhibits Under Seal.

by the parties and, in some cases, in lieu of requests for overlapping document requests that the Court declined to authorize). Significantly, Plaintiff's latest document demands for communications generally between the JASTEC Defendants and LTU Defendants and communications and documents regarding travel by individuals acting on behalf of JASTEC Defendants to the District of Columbia, two categories which now feature prominently in Plaintiff's Motion, were considered and rejected and are not included in the Court's Order. Specifically, the Order stated: "Plaintiff's proposed Topics (xi) and (xii) requesting "all communications" relating to a variety of topics are overly broad for purposes of conducting limited jurisdictional discovery and furthermore, such inquiries may be more appropriately directed to a witness during deposition. These proposed Topics will thus be disallowed." (Order, p. 3) Defendants have fully complied with the Order and Plaintiff has provided no reason to revise it.

**A.    Discovery Activities from December 20, 2007 through February 19, 2008**

**1.    Document Production**

On January 19, 2008, as required by the Order, Defendants produced the following documents to Plaintiff:

> *1(a)(i): A copy of all consulting agreements between JASTEC International, Inc. or JASTEC Co. Ltd. (a "JASTEC Defendant") and LTU (to include any agents of LTU who are authorized to act on its behalf);*

- October 2006 Inter-Company Management Services Agreement between JASTEC International, Inc. and LTU SAS for consulting services provided by Noboru Nakatani;

- Operation Assistance Agreement dated August 1, 2005 between JASTEC Co. Ltd. and LTU Technologies, Inc., an agreement under which JASTEC Co., Ltd. provided sales assistance to sell LTU products in Japan;

- Service Agreement dated October 1, 2006 between JASTEC Co., Ltd. and LTU SAS, replacing the August 1, 2005 Operation Assistance Agreement, to provide sales assistance to sell LTU products in Japan.

2

*1(a)(ii): Copies of loan documents or guarantees, if any, between a JASTEC Defendant and LTU (to include any agents of LTU who are authorized to act on its behalf);*

- Loan agreement between JASTEC Co., Ltd. and LTUS SAS May 11, 2006;

- Extension of Loan Agreement between JASTEC Co., Ltd. and LTU SAS May 11, 2007

*1(a)(iii): Copies of financial records reflecting payments or guarantees from either JASTEC Defendant to LTU (to include any agents of LTU who are authorized to act on its behalf);*

- Records of payments to Kevin Smith as reimbursement for expenses incurred for travel to Japan at the request of LTU International

*1(a)(iv): Copies of financial records reflecting payments or guarantees from LTU (to include any agents of LTU who are authorized to act on its behalf) to either JASTEC corporation, to the extent such documents exist*

- Records of payments from LTU SAS to JASTEC Co. for interest payments on Loans dated November 7, 2006, May 11, 2007 and September 11, 2007;

- LTU Check register reflecting payments from LTU to JASTEC Co. for payments made in 2005 and 2006 for the Management Consulting Agreement;

- HSBC Bank Statements reflecting payments from LTU SAS to JASTEC Co. pursuant to the Service Agreement from September 2, 2006 through December 21, 2007;

- HSBC Bank Statements reflecting payment of a French value added tax based upon LTU SAS payments to JASTEC Co.;

- HSBC Bank Statements reflecting payment from LTU SAS to JASTEC International for the services of JASTEC International, Inc. under the Management Consulting Agreement from December 20, 2006 through November 10, 2007.

*1(a)(v): Copies of receipts for payments made to The Ashcroft Group, LLC by any Defendant.*

- Check register reflecting payments by LTU Technologies, Inc. to the Ashcroft Group

As to the last three categories of documents, including Human Resources documents, licensing agreements and contracts for business with private or government entities in the

3

District of Columbia, no documents were produced because Defendants had no responsive documents.

On January 28, 2008 Plaintiff sent Defendants a letter, in an obvious attempt to expand the limited scope of discovery, objecting to Defendants' document production in several respects and demanding additional information to be produced two days hence, by January 30, 2008. (Exhibit 1)  Defendants responded on January 31, 2008, declining to provide documents beyond the scope of the Order and offering to discuss the matter.  (Exhibit 2)  In what has become a pattern of gamesmanship in this litigation, Plaintiff responded with a rather cryptic letter dated February 1, 2008 implying that Plaintiff had other sources for the information it sought and threatened to "identify the sources on which I intend to rely."  (Exhibit 3)  Plaintiff additionally hastily arranged for a telephone conference with Magistrate Judge Kay to take place Monday morning February 4, 2008 at 11:00 a.m.

To attempt to resolve the issues between them without the need to waste the Court's resources, counsel for the parties spoke Monday morning, February 4, 2008.  It was clear from the conversation that Plaintiff labored under some significant misconceptions, without any factual basis.  The most obvious errors were Plaintiff's belief, or perhaps hope, given that it had no factual basis for such a belief, there had been a multitude of employees from Japan travelling to the District of Columbia on behalf of JASTEC Tokyo, and that JASTEC Tokyo had at least one, if not more than one, licensing agreement with one or both LTU Defendants.  As has been borne out in discovery and was then stated to Plaintiff's counsel, *no* JASTEC Tokyo employees had been to the District of Columbia, save for the single visit each of Mr. Otah and Mr. Shibiyama in 2006 for an LTU SAS Board of Directors meeting,[2] and the Defendants had entered into no licensing agreements.

---

[2] This fact was readily disclosed by Defendants in their Motion to Dismiss and is not in contention.

As a result of counsel's discussion, Defendants produced a copy of the Stock Purchase Agreement between JASTEC International and the shareholders of LTU SAS, by which JASTEC acquired ownership of LTU, dated March 25, 2005,[3] identified the sources of the documents previously produced (an issue that has resurfaced in the instant motion as a current complaint of Plaintiff) and confirmed that the Ashcroft Group had been paid no money by any Defendant in 2005. Plaintiff's counsel then cancelled the telephone conference with Judge Kay it had arranged.

## 2.    Depositions

Pursuant to the Order, Noboru Nakatani, President of JASTEC International, Inc. was deposed for a full day on February 5, 2008. Alexandre Winter, the designated Rule 30(b)(6) witness for the LTU Corporate Defendants, was deposed for a full day on February 7, 2008. Transcripts of both depositions were available electronically to counsel for the asking the day following each deposition.

Plaintiff did nothing more to pursue discovery by the deadline of February 19, 2008[4] until the evening of February 14, 2008 when it sent a letter to Defendants stating Plaintiff was "still in the process of reviewing the depositions" and demanding production of 72 additional documents or categories of documents, the continued deposition of Mr. Winter and the additional deposition of Chahab Nastar, a former employee of Defendant LTU SAS.[5] (Exhibit 1, Plaintiff's Motion to Compel) The letter, received by Defendants the morning of February 15, 2008, demanded

---

[3] Plaintiff asked for the document on grounds that purchase of the shares reflects payments to LTU employees by a JASTEC entity, because some of the shareholders were then also LTU employees. While this proposition is debatable and the document has no jurisdictional relevance, Defendants chose to accept Plaintiff's interpretation of the document demand and produced the agreement. Plaintiff was already well-aware of the document because ADF co-founder Raphael Bousquet was an LTU SAS shareholder and a party to the agreement.

[4] From Defendants' perspective, discovery of Defendants was complete once Mr. Winter's deposition was closed because all documents called for by the order had been produced and both witnesses had been deposed for a full day.

[5] Mr. Nastar formerly served as the Paris-based CEO of LTU SAS and was paid by that company. Some LTU officers serve in dual capacities for the two LTU entities, and Mr. Nastar also served for much of his tenure as CEO of LTU, Inc.

compliance with the additional requests by *Sunday*, February 17, 2008. Again, in an effort to avoid unnecessary motion practice, Defendants agreed to consent to Plaintiff's further request for a 30 day extension of the discovery period to March 19, 2008, but made it very clear from Defendants' perspective, no extension or further discovery was necessary. (See Exhibit 2, Plaintiff's Motion to Compel at 1; see also Motion for Enlargement of Time to Extend Jurisdictional Discovery [Doc. No. 33] at 2)

### B.    Discovery Activities from February 20, 2008 through March 19, 2008

On February 22, 2008, Defendants responded in considerable detail to Plaintiff's additional discovery demands. (Exhibit 2, Plaintiff's Motion to Compel) Plaintiff's additional document requests as set forth in a chart provided by Plaintiff on February 14, 2008 extended well beyond the scope of document production ordered by this Court, including the following:

- Defendants' internal corporate financial reports
- Defendants' research and development quarterly reports
- Internal LTU SAS technical team report
- LTU Board Meeting minutes
- Receipts for Mr. Noboru's travel to LTU Washington office
- A list of Japanese customers referenced during meetings in Japan
- Documents utilized during a LTU SAS Board of Director's Meeting in 2006
- Comparison budgets and spreadsheets for the corporate Defendants
- List of LTU, Inc. contractors
- Emails between Mr. Noboru and Mr. Winter
- Mr. Winter's travel expenses for trips to Japan
- Profit and revenue statements for LTU, Inc.
- Mr. Winter's communications with LTU SAS employees
- Written communications between LTU SAS and JASTEC Co. Ltd. prior to the acquisition of LTU SAS by JASTEC International
- Internal LTU, Inc. accounting records
- Information relative to sales initiatives of LTU SAS for products to be sold in Japan

Because Plaintiff's requests grossly exceeded the plain terms of the Order, Defendants declined to produce the documents requested.

Contrary to Plaintiff's assertion that the parties thereafter "actively engaged in discovery" Plaintiff did nothing further and Defendants received no response to its February 22, 2008 letter until *three weeks later* at 7:45 p.m. on a Friday evening, *March* 14, 2008 when Plaintiff simply reiterated its requests of the prior month.  (Exhibit 3 to Plaintiff's Motion to Compel)  Rather than address any of the contents of Defendant's February 22, 2008 letter, including but not limited to the fact that some of the documents demanded (such as contracts between the defendants) had already been produced and many others fell into categories already rejected by the Court.  Plaintiff demanded production of the additional documents set forth above by the close of business the following Monday, March 17, 2008.  On March 17, 2008, by letter, Defendants declined to agree to Plaintiff's last-minute, repetitive and excessive demands. (Exhibit 4 to Plaintiff's Motion to Compel)

On March 18, 2008 the parties' counsel engaged in a telephone conversation and an exchange of emails to try to resolve the dispute between them.  As a result of the brief conversation, Defendants' counsel understood that Plaintiff was prepared to significantly limit its supplemental document demands to expense reports for trips taken by Mr. Winter to Japan and by Mr. Nakatani to Washington and, although such documentation is beyond the scope of the Order and irrelevant to the question of jurisdiction, in response agreed to reconsider Defendants' position accordingly in the interests of avoiding motions practice.  However, Plaintiff's "confirming" email of March 18, 2008 requested not just travel expenses, as discussed, but resurrected an additional 38 documents (or categories of documents couched in phrases such as "all communications" between the Defendant corporations), making it clear no resolution had

been reached.  (Exhibit 5 to Plaintiff's Motion to Compel)  The following day, March 19, 2008, the extension of the discovery period expired and the instant motion was filed that evening at 11:45 p.m.  Between February 19, 2008 and March 19, 2008, Plaintiff did precisely nothing to further discovery in this action and now appeals to this Court to relieve it of its own negligence and sanction its overbroad demands.  Equally or more to the point, even if these excessive demands had been timely, the instant motion is not a motion to compel.  It is instead a motion to reconsider the scope of the Order, which was entered three months ago after consideration of the parties' respective positions, including Plaintiff's similarly broad requests.

## II.    PLAINTIFF'S REQUESTS TO EXPAND THE SCOPE OF DISCOVERY AND TIME TO COMPLETE DISCOVERY

### A.    Information "Promised" During Depositions

Plaintiff alleges generally that Alexandre Winter, the LTU Defendants' Rule 30(b)(6) witness, repeatedly promised to provide documents and additional information during his deposition.[6]  This is not the case.  Mr. Winter responded fully and within the scope of topic areas authorized by the Court, and in many instances, beyond the Court's Order, for an entire day. From time to time he was asked to comment on documents Plaintiff's counsel had in their possession but were not showing the witness or, when asked for detailed recollections, specifically on the issue of internal finances, stated he could check documents to be certain of his answer.  Not surprisingly, in a few instances, Mr. Winter did not know a particular answer. However, all such occasions arose in the context of questions beyond the scope of the specific topics for which he had been offered.  Further. Mr. Nakatani had already provided some of the

---

[6] Plaintiff has made numerous references to Mr. Winter's and Mr. Nakatani's depositions, in many cases, mischaracterizing the testimony therein.  In no instance did either deponent promise any additional information or documents.  We have set forth several examples in Defendants' Opposition to Plaintiff's Motion to Compel Discovery, but will spare the court a blow by blow recitation of the numerous excerpts incorrectly referenced or skewed by Plaintiff.

information requested of Mr. Winter or, in the instance of whether LTU, Inc. or LTU SAS had made a particular contractual payment, the information was contained in documents produced by Defendants and in Plaintiff's possession.  None of Mr. Winter's deposition testimony provides justification for Plaintiff's request that this Court expand its Order to include the kinds of intrusive information requested or to compel Mr. Winter to appear for a second deposition.

      **B.**       **LTU Financial Information**

Whether or not LTU, Inc. earned a profit is immaterial to whether the court has jurisdiction over JASTEC Tokyo or JASTEC New York.  Defendants have never disputed that both LTU companies are wholly owned subsidiaries of JASTEC Tokyo, through its holding company, JASTEC New York.  Furthermore, Plaintiff knows JASTEC Tokyo has invested in the LTU Defendants because Defendants produced loan agreements and bank records reflecting that financial arrangement.  For example, Mr. Nakatani was questioned about the 35th Term Business Report of JASTEC Tokyo that clearly stated the three foreign subsidiaries, LTU, Inc., LTU SAS and JASTEC International, Inc. had a recorded "ordinary loss of $197 million yen on a consolidated basis."[7]  (Nakatani p. 125 and Nakatani Exhibit 3)  Plaintiff has JASTEC Tokyo's 2006 report, as well. (Nakatani Exhibit 4) In light of the information Plaintiff already has, Defendants respectfully submit Plaintiff does not need additional access to Defendants' internal financial records.

As stated above, Plaintiff complains that Mr. Winter could either not recall specific details about the LTU Defendants' finances or did not know them.  However, when referenced testimony is reviewed, it is clear Plaintiff has mischaracterized it.

---

[7] The transcript of Mr. Nakatani's deposition incorrectly references a loss of 197 million dollars, but the document referenced therein reflects a loss of 197 million yen for the three foreign subsidiaries.

For example, Plaintiff asserts that Mr. Winter could not give an opinion about LTU, Inc.'s financial situation at a specific point in time, referring to Mr. Winter's testimony at pages 176-177. In actuality, Mr. Winter was asked why LTU SAS extended repayment of a loan from JASTEC Tokyo past its repayment date of May 10, 2007. (Winter p. 175) Mr. Winter responded that LTU SAS did not have the cash to pay the loan. He was then asked whether LTU Technologies, Inc. would similarly be in need of cash if the parent company lacked the cash to repay the loan and Mr. Winter responded he did not think that would be the case, but *would have to check* the cash position of the two companies at that point in time to be certain. This is hardly, as Plaintiff characterized it, testimony reflecting Mr. Winter "could not remember pertinent financial details about his company." Nor is Mr. Winter's testimony a promise to produce further documentation. Plaintiff's mischaracterization of Mr. Winter's testimony is simply a back door request to enlarge discovery to include broad categories of highly sensitive documents, including internal financial records and communications with no meaningful (if any) connection to the question of whether JASTEC has contacts with this jurisdiction other than direct ownership of LTU SAS and, through LTU SAS, of LTU Inc..

### C.    Mr. Winter's Travel

Mr. Winter's trips to Japan, about which he testified and Mr. Nakatani testified, were for the purpose of selling LTU SAS products *in Japan*, a fact not in dispute. Moreover, those trips have nothing to do with the Court's jurisdiction. In like manner, discovery about Mr. Winter's trips to Paris and New York City are not relevant to the issue of jurisdiction in the District of Columbia. However, in the interest of concluding the instant discovery without the further expense and burden of motions practice, Defendants provisionally *agreed* to produce Mr. Winter's and Mr. Nakatani's travel receipts.

10

Plaintiff, apparently dissatisfied with Defendants' willingness to produce the supplemental records it requested, has exaggerated and distorted Mr. Winter's testimony to obtain even more expansive discovery. For example, Plaintiff referenced page 106 of Mr. Winter's testimony relative to email communication between Mr. Winter and Jasctec Tokyo: "This electronic mail record would bolster the finding of *extensive* JASTEC Defendant contact with the District." (Plaintiff's Brief, p. 5) In fact, Mr. Winter's testimony on page 106 of his transcript referenced the possibility he may have exchanged a single email or an instant message with Matsumoto San in Japan when making arrangements to go *to Japan*. The referenced testimony has absolutely nothing to do with the District of Columbia, nor any other fact that could substantiate the Court's exercise of jurisdiction over a company that operates its business exclusively in Japan.

### D.   Mr. Nakatani's Travel

Plaintiff's request for Mr. Nakatani's travel records are similarly unnecessary to determine jurisdiction in this instance. Plaintiff asserts Mr. Nakatani "admitted" to traveling to the District of Columbia, but in fact, Mr. Nakatani's travels were revealed to the Court and to Plaintiff when Defendants first filed its motion to dismiss the complaint for lack of jurisdiction. During his deposition, Mr. Nakatani was completely candid about his trips to the District of Columbia, relative to their frequency and purpose. Further discovery is not necessary on this issue. Additionally, as is the case regarding travel receipts, Plaintiff conflates the Court's Order relative to document production with the deposition topics approved by the Court. Plaintiff improperly relies upon the scope of the depositions allowed by the Court to justify expanding the scope of document production, arguing the records it requests are "contemplated under the Order" when in fact, the records it seeks are well beyond the Court's Order. (Motion to Compel,

pp. 8-9)  Further, even looking solely to the relevant deposition topic ordered by the Court, the Order specifically pared back Plaintiff's proposed topic iii, to depose Mr. Nakatani on the "details" of travel to the District of Columbia, to a "description" or "summary" of such travel or meetings (Order, p. 4).

### E.    Agreements Among Defendants

Defendants produced *all* agreements and service contracts among them, as Ordered. Plaintiff, although obviously dissatisfied with the result, cannot demand documents that have *already been produced* or that it imagines simply must exist.  Plaintiff's repeated requests in this regard underscore that Plaintiff is clearly attempting to create jurisdiction where none exists.

### F.    Sales in Japan

Plaintiff complains it has no documents regarding the sale of LTU software in Japan (which no party disputes is developed in France by LTU SAS) and that Mr. Winter was not adequately informed about such sales.  However, in no instance has Plaintiff shown that details of such sales of LTU SAS products to third parties in Japan were contemplated by the Order, nor indicated why the sales are relevant to whether this Court has jurisdiction over a Japanese entity, JASTEC Tokyo.

In the instant matter, this Court ordered "limited jurisdictional discovery" (Order, p. 2). The Court's Order is a reflection that "the D.C. Circuit has cautioned that such jurisdictional discovery should be 'carefully controlled and limited.'"  Artis v. Greenspan, 223 F. Supp. 2d 149, 2002 U.S. Dist. LEXIS 18078 (D.D.C 2002) (in which the court granted limited jurisdictional discovery on the issue of whether two of the plaintiffs had exhausted administrative remedies prior to bringing suit under Title VII of the Civil Rights Act of 1964, 42

12

U.S.C. §2000e, *et seq.*)  Defendants have fully complied with the Order, and Plaintiff has provided no justification to expand the scope of discovery ordered by the Court.

       **G.**      **The JASTEC Defendants' Document Production**

Plaintiff's further arguments that Defendants should not be allowed to "pick and choose" relevant documents or that the JASTEC Defendants have provided no documents are baseless. Defendants' document production was on behalf of *all* Defendants.  Significantly, the JASTEC Defendants provided records of payments to it from LTU Defendants, and loan agreements and support agreements for sales in Japan between it and LTU Defendants.  In other instances, the JASTEC Defendants have responded that they are not possession of certain documents requested because they do not exist.  Mr. Nakatani was questioned about the JASTEC entities for a full day and responded to questions put to him in a forthright manner.  Plaintiff's assertion that the JASTEC Defendants neglected to participate in discovery is absurd on its face.

**III.**   **JURISDICTIONAL DISCOVERY SUPPORTS DISMISSAL OF THE JASTEC DEFENDANTS**

Jurisdictional discovery has shown the JASTEC Defendants do not control the operations of the LTU Defendants, all corporate formalities are maintained, separate corporate minutes are kept, there is no co-mingling of funds of the corporations, no corporate assets are diverted to personal use, the facilities of the various Defendants are maintained separately, and JASTEC operates elsewhere than the District of Columbia.  Nothing revealed in discovery has controverted these facts.

There is no evidence to overcome Mr. Nakatani's and Mr. Winter's deposition testimony clearly showing that JASTEC Tokyo and the LTU Defendants are engaged in very different businesses.  To the limited extent that the companies become involved with each other, JASTEC Tokyo, as has been said repeatedly, supports the sale of LTU SAS products and services *in*

*Japan.* LTU, Inc. sells LTU SAS software and its own services in the United States. Moreover, JASTEC Tokyo's involvement with its subsidiaries does not create jurisdiction: "The Supreme Court articulated a generally applicable principle that a parent corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is consistent with the parent's investor status … appropriate investor involvement includes monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions and articulation of general policies and procedures." Doe v. Unocal Corp., 248 F.3d 915, 2001 U.S. App. LEXIS 7691,**19-**20 (9th Cir. 2001) (citing United States v. Bestfoods, 524 U.S. 51, 118 S.Ct. 1876 (1998)).

The facts as initially set forth in Defendants' motion to dismiss the JASTEC Defendants remain undisturbed by discovery:

Among other pertinent facts, JASTEC Tokyo and JASTEC International:

- Are not registered to do business in the District of Columbia;
- Have no registered agent in the District of Columbia;
- Possess no real property in the District of Columbia;
- Pay no taxes in the District of Columbia;
- Have no employees in the District of Columbia;
- Do not advertise in the District of Columbia;
- Submit no bids or proposals in the District of Columbia;
- Sell no products in the District of Columbia; and
- Do not target a website to residents of the District of Columbia.

JASTEC Tokyo and JASTEC International:

- Do not share employees with each other or with either LTU Defendant;
- Do not share offices with each other or with either LTU Defendant;
- Do not share a physical plant with either LTU Defendant;
- Do not file taxes with each other or with either LTU Defendant;
- Do not engage in any inter-corporate dealings with either LTU Defendant, that are not arms – length and conform with all corporate formalities.

It is further undisputed that JASTEC Tokyo sells its services entirely within Japan. Its website includes no foreign corporations and it solicits no business within the United States. All

14

of JASTEC Tokyo's marketing efforts are targeted to its Japanese market. JASTEC International was created and continues to function to research and identify opportunities outside of Japan for JASTEC Tokyo to acquire businesses dealing in prepackaged software. In that capacity, JASTEC International operates from its New York City office, as stated by Mr. Nakatani.

When Plaintiff first requested jurisdictional discovery, it correctly noted that courts approve of "precisely focused discovery" to address jurisdictional matters. Diamond Chemical Company, Inc. v. Atofina Chemicals, Inc., 268 F. Supp. 2d 1, 15 (D.D.C. 2003). Significantly, however, and contrary to the legal authority it references, the discovery Plaintiff now seeks is not "precisely focused" but is extremely broad and intrusive. The focused discovery authorized by the Court has left intact a record that will not support Plaintiff's aggressive attempt to dragoon foreign entities into this jurisdiction in violation of their rights. Further, Plaintiff's instant motion amounts to a Hail Mary pass to avoid the end of a discovery period in which it neglected to engage timely in the focused discovery granted it by the Court, or any reasoned request to expand that Order if it was dissatisfied with its scope when the Order was entered in December.

## IV.    PLAINTIFF'S REQUESTS FOR RELIEF

### A.    Additional Discovery Is Unwarranted

Plaintiff's first request for relief to this Court is for an Order of further, expansive discovery including production of documents Plaintiff initially requested this Court to include in jurisdictional discovery, which request was denied. For all the reasons set forth above, Defendants respectfully submit Plaintiff's request should be denied again.

### B.    Finding the JASTEC Defendants are Subject to the Court's Jurisdiction is not Supported by the Facts or Warranted as a Sanction for Defendants' Conduct in Jurisdictional Discovery

15

Plaintiff argues, in the alternative, that the JASTEC Defendants should be ordered to submit to the jurisdiction of the Court pursuant to Fed. R. Civ. P. 37(b)(2)(A) and (C). Without support, Plaintiff suggests that the Court should either find jurisdiction based upon the facts now known to the parties or as a sanction for failing to engage in discovery. Both theories should be rejected outright.

In Compagnie Des Bauxites De Guinee v. L'Union Atlantique S.A. D'assurances, 723 F.2d 357, 359-360 (3d Cir. 1983), the Court found jurisdiction against foreign companies that refused to engage in jurisdictional discovery and defied court orders for a period of *years*. However, in the instance of three of the foreign companies at issue in the case, the court declined to subject them to personal jurisdiction because they had cooperated in discovery and because the record contained insufficient facts upon which the Court could justify a finding of jurisdiction.

In the instant matter, as set forth above in Section IV, the facts of record confirm that jurisdiction over the JASTEC Defendants is not justified. Moreover, the JASTEC Defendants actively engaged in the jurisdictional discovery process even before the Court issued the December 20, 2007 Order. Defendants opened the parties' dialogue on a discovery plan, and submitted a proposed discovery order to the Court upon which Plaintiff simply added its suggestions, which for the most part, were rejected. Defendants, when served with a demand for 72 additional documents and classes of documents on a Friday morning – to be produced the following *Sunday* – agreed to forego an exercise in muscle flexing and consented to Plaintiff's application to this Court for more time to complete discovery so the parties could reasonably discuss their differences.

Plaintiff ignored the extension of time the Court granted it until the last possible moment when it again served Defendants with the same pedantic improper demands, a month later to the day, on a Friday evening for production the following Monday.  Nothing in the foregoing recitation of events of jurisdictional discovery between the parties indicates Defendants failed to cooperate in discovery or have engaged in conduct warranting sanctions of any kind.  In all instances, Plaintiff has neglected discovery and, when caught up short by its own inaction, has metaphorically thumped its chest to try to save itself from the inevitable expiration of time.

## CONCLUSION

Plaintiff should not be rewarded for its dilatory tactics and brazen attempts to circumvent the very discovery Order it requested, and to which it has failed to adhere.  Based upon the foregoing facts and legal authority Defendants urge the Court to deny Plaintiff's motion in its entirety and sustain its prior Order to close jurisdictional discovery as of March 19, 2008 and to grant such further relief as this Court deems just and proper.

Dated: April 2, 2008

Respectfully submitted,

/s/ Joseph E. Schuler
Joseph E. Schuler (DC Bar #296269)
JACKSON LEWIS LLP
8614 Westwood Center Drive, Suite 950
Vienna, VA 22182
(703) 821-2189 (telephone)
(703) 821-2267 (facsimile)
schulerj@jacksonlewis.com

17

# EXHIBIT 1

# EXHIBIT 1

# Greenberg Traurig

Walter Steimel, Jr.
Tel. 202.452.4893
Fax 202.331.3101
SteimelW@gtlaw.com

January 28, 2008

**VIA FACSIMILE (703-821-2267)**
**and FIRST-CLASS MAIL**

Joseph Schuler, Esq.
Jackson Lewis LLP
8614 Westwood Center Dr
Suite 950
Vienna, VA 22182

Re:    Advanced Digital Forensic Solutions Inc. v. LTU Technologies, Inc. et al.

Dear Joe:

We are in receipt of your document production related to personal jurisdiction in the above-referenced case. We have reviewed the documents, and need to confer with you regarding a number of issues. For your convenience we set those forth below.

1.    **Source of documents; Both Party and Location.**

Your clients failed to identify the source of the documents produced. We need the identity of the particular client who produced each document, and a description of the location where these documents were kept in the normal course of business. As is common in contemporary discovery, we will also need the electronic version of all documents that were stored electronically.

2.    **Missing documents, as indicated in the production.**

Bates Stamp number D007 consists of an Operation Assistance Agreement between Jastec Co., Ltd. and LTU Technologies, Inc. By its terms, Jastec supplied employees to LTU in D.C., yet your clients produced no documents indicating which employees traveled to D.C., when they traveled, where they stayed, or what they did, nor did they provide copies of the materials that they brought with them. We believe that these supporting documents are required under the terms of the discovery order, and we request that you provide them immediately.

Bates Stamp numbers D022 and D023 appear to document a number of payments from LTU Technologies, Inc. to Jastec Co., Ltd. The entries enumerate Voucher numbers and Invoice numbers, yet your clients did not provide the vouchers, invoices, or copies of the checks. Your

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TAMPA
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance

01/28/2008    18:26                                    NO.484    P003

Joe Schuler, Esq.
January 28, 2008
Page 2

_____

clients need to produce these to us as soon as possible. Your clients should also produce all
documentation related to both these payments and the work performed in exchange for these
payments.

We note that the Operation Assistance Agreement at Bates Stamp number D007 states that
"JASTEC will invoice LTU, Inc. the sum amount of the wage and related expenses on a
periodic basis." Your clients should provide these invoices and all related documents
immediately.

We have specific, credible information demonstrating that your clients are withholding relevant
information that they are required to provide us under the terms of the Judge's discovery order.
Among the information being withheld is information related to trips made by Jastec Co., Ltd.
employees to the District of Columbia pursuant to the Operation Assistance Agreement and
other agreements. We have reason to believe that your clients have withheld relevant and
responsive documents, and request that you instruct your clients to make a full and complete
disclosure of all documents no later than Wednesday, January 30, 2008.

This notification is not comprehensive; we believe that your clients have failed to disclose other
relevant documents but we are notifying you only of documents about which we have specific
information. We hereby notify you that should your clients continue to withhold these
documents, we will bring this matter to the attention of the court and request costs, attorneys'
fees, fines and other relief. We provide this notification to you as a courtesy.

3.    Response to document request numbers vi. and ix.

Request numbers vi. and ix. include, *inter alia*, all Human Resource documents, stock plans,
stock options, plans, reimbursements, and benefits offered by Jastec Co., Ltd. to LTU or any
LTU officer or employee from February 2005 to present. You state that your clients have no
documents responsive to this request, but we believe that your clients have not made you aware
of documents in their possession, custody, and / or control. Among the documents that we
expected to see were evidence of the stock option buyout payments that Jastec made to LTU
employees during Jastec's acquisition of LTU, and other relevant and responsive documents.
We request that you inquire of your clients again for these and related documents in order to
avoid our having to request production from the court.

Documents bearing Bates Stamp numbers D008 to D010 state that LTU is supplying products
for sales in Japan. This document states that "JASTEC shall provide the support services
relating to the following LTU's business [sic] concerning the marketing of the Software in
Japan...." The document also states that "LTU shall pay to JASTEC the amount equivalent to
the actual costs incurred by JASTEC for the JASTEC's employees...as calculated in
accordance with the JASTEC's own rules for wages, benefit plans, traveling expenses and so

Joe Schuler, Esq.
January 28, 2008
Page 3

on…." Your clients provided none of the referenced documents, and we have reason to believe that either or both of the LTU entities have relevant Human Resource documents that have not been given to us. We request that you consult with your clients and provide those documents to us immediately.

The Operation Service Agreement at Bates Stamp number D007 states that "[Jastec] Employees will follow the terms of work at LTU, Inc." Accordingly, your clients should produce these "terms of work" and all disclosures made to Jastec employees working under the Operation Service Agreement.

4.    **Response to document request number vii.**

Request number vii. includes, *inter alia*, all licensing agreements between the Jastec Defendants and the LTU Defendants. Your response states that Defendants are not in possession of any such documents. We believe this is not the case, and that your clients have failed to search for, identify and provide licensing agreements. The Operation Assistance Agreement you provided in Exhibit A at Bates Stamp number D007 specifically references "technological client support" and sales and marketing support. We do not believe that your clients undertook these actions without any licensing or other similar agreements being executed.

In addition, the document at Bates Stamp numbers D008 to D010 states that LTU is supplying products for sales in Japan. Once again, we have reason to believe that there are licensing and similar documents that your client did not provide. We request that you consult with your client and provide those documents to us immediately.

5.    **Response to document request number x.**

Request number x. includes, *inter alia*, all "press releases, promotional materials, proposals or agreements" for "activities undertaken in the District of Columbia." The Operation Assistance Agreement you provided in Exhibit A at Bates Stamp number D007 specifically references "technological client support" and sales and marketing support. We have reason to believe that, pursuant to the Operation Assistance Agreement, employees of the JASTEC entities and certainly, of the LTU entities, developed, edited and used relevant documents. We are specifically aware of press releases developed and released by LTU, which would qualify as "activities undertaken in the District of Columbia."

We have reason to believe that your clients are withholding these documents from you and from us. We are certain that you would rather have your clients produce relevant documents than have us bring relevant documents that were not provided by your clients to the court's

01/28/2008    18:26                                                                NO.484    P005

Joe Schuler, Esq.
January 28, 2008
Page 4

attention. We request that you make appropriate inquiries of your clients and provide these documents immediately.

6.    **Ashcroft Group payments; Requests v. and x.**

Bates Stamp number D047 indicates payments from LTU Technologies, Inc. to the Ashcroft Group in the amount of $70,000 during 1996. Once again these records indicate voucher and invoice numbers, yet the vouchers and invoices are missing. Your clients need to provide these to us immediately.

Jastec Co., Ltd. made payments of $20,000 to the Ashcroft Group in 2005. Your clients failed to produce documents related to Jastec's hiring of the Ashcroft Group, and should immediately produce all relevant documents including but not limited to the consulting agreement, all vouchers and invoices, evidence of payments, records of meetings with the Ashcroft Group and any other relevant documents in the possession of your clients.

The missing documents are relevant, at a minimum, to request number (v) "copies of receipts for payments made to The Ashcroft Group" and request number (x) "[a]ll . . . agreements directed to a[n] . . . entity in the District of Columbia."

7.    **Parties represented.**

We request that you identify which Defendants responded pursuant to the document production you sent us. We need to know whether your responses are for all four Defendants, or only some of the Defendants. As noted above in paragraph 1, we also need to know the identity of the Defendant producing each document.

We specifically note that LTU Technologies, Inc. is represented by Banner Witcoff, yet I have not received any communications from them. I am copying the Banner Witcoff attorneys in order to notify them of the production deficiencies and to inform them we intend to also hold them responsible for any discovery deficiencies.

In accordance with the issues I have raised herein, and in addition to your correction of the deficiencies I have noted, please provide the following information no later than close of business Wednesday, January 30, 2008:

    a.    The identity of the Defendants who responded pursuant to your document production of January 22;

    b.    The identity of the Defendant who produced each document;

    c.    The name of the personnel responsible for producing each document and a full identification of source;

Joe Schuler, Esq.
January 28, 2008
Page 5

---

    d.    A statement whether each document existed in an electronic format, and if so, a copy of the electronic version;

    e.    A statement whether any drafts or other copies exist that contain writing or notations different from the versions you supplied, and if so, the provision of such documents; and

    f.    The identity of any Defendant who has not responded and state when we can expect a response.

    Please provide us with the additional documents no later than Wednesday, January 30, 2008. I am available for a conference at your convenience, but expect full compliance with the discovery order by close of business this Wednesday.

        Very truly yours,

        Walter Steimel, Jr.

WES/mhc

cc:    Robert F. Altherr, Jr, Esq.
        Helen Hill Minsker, Esq.
        Bradley C. Wright, Esq.

# EXHIBIT 2

# jackson|lewis
### Attorneys at Law

Representing Management Exclusively in Workplace Law and Related Litigation

Jackson Lewis LLP
8614 Westwood Center Drive
Suite 950
Vienna, VA 22182
Tel 703 821-2189
Fax 703 821-2267
www.jacksonlewis.com

| | | |
|---|---|---|
| ATLANTA, GA | LONG ISLAND, NY | PROVIDENCE, RI |
| BIRMINGHAM, AL | LOS ANGELES, CA | RALEIGH-DURHAM, NC |
| BOSTON, MA | MIAMI, FL | RICHMOND, VA |
| CHICAGO, IL | MINNEAPOLIS, MN | SACRAMENTO, CA |
| CLEVELAND, OH | MORRISTOWN, NJ | SAN FRANCISCO, CA |
| DALLAS, TX | NEW YORK, NY | SEATTLE, WA |
| DENVER, CO | ORANGE COUNTY, CA | STAMFORD, CT |
| GREENVILLE, SC | ORLANDO, FL | WASHINGTON, DC REGION |
| HARTFORD, CT | PITTSBURGH, PA | WHITE PLAINS, NY |
| HOUSTON, TX | PORTLAND, OR | |

MY DIRECT DIAL IS: 703-821-4314
MY EMAIL ADDRESS IS: SCHULERJ@JACKSONLEWIS.COM

January 31, 2008

**VIA FACSIMILE & U.S. MAIL**

Walter Steimel, Jr.
Greenberg Traurig LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037

Re: Advanced Digital Forensic Solutions,
Inc. v. LTU Technologies, Inc., et al.

Dear Walt:

We are in receipt of your letter of January 28, 2008. Defendants respond as follows:

As an initial matter, we note that the discovery ordered by the Court is directed only to the issue of personal jurisdiction as to the two JASTEC Defendants in the above-referenced matter and, thus is quite limited. Plaintiff now is attempting to expand that limit set by the Court significantly to include, for example, discovery relative to matters between LTU SAS and JASTEC Co. Ltd., having nothing to do with whether JASTEC Co. Ltd. or JASTEC International, Inc. are subject to the jurisdiction of the United States District Court for the District of Columbia.

Furthermore, the parties were directed to draft a proposed jurisdictional discovery order together. Plaintiff did not join in this process, but submitted its own draft, absent all of the requirements you now seek to impose on Defendants' responses. The Court ultimately adopted Defendant's master draft and specifically added or rejected Plaintiff's suggestions. The Court did not order Defendants to provide information regarding the identity of parties producing jurisdictionally relevant documents, a description of the location of the documents or any other of the information you seek as set forth in Paragraph 1 of your letter, including any directive to produce electronic versions of any documents Ordered by the Court. Had this information been critical to Plaintiff, it should have been addressed during the drafting process when Defendants specifically invited such participation from Plaintiff.

Walter Steimel, Jr.
2101 L Street, NW
January 31, 2008
Page 2

# jackson |lewis

Attorneys at Law

Turning to issue 2 of your letter, I will respectfully suggest that you mistake the purpose of the agreement and the nature of the services. Regardless, the information you request is properly the subject of depositions of Mr. Nakatani and/or the LTU Rule 30(b)(6) witness. In no instance did the Court order production of documents regarding which employees travelled to D.C., where they stayed or any other of the information you request. However, referring to the Order, at paragraph (b)(vi), Mr. Nakatani was directed to testify on that topic: "A description or summary of the extent of all employees and representatives of both JASTEC Defendants presence in the District of Columbia for business reasons, including all travel to or meetings in the district."

In like manner, Plaintiff's request for vouchers, invoices and copies of checks, as well as "all documentation related to these payments and the work performed" is not consistent with letter or the spirit of the Court's December 20, 2007 Order. The Court directed Defendants to produce "financial records reflecting payments or guarantees" between and LTU and the JASTEC Defendants, flowing either way (Order, ¶¶(1)(b)(iii) and (iv)). Defendants have produced records reflecting the payments or guarantees, as required. The additional information Plaintiff seeks as set forth in Paragraph 2, including "vouchers, invoices, or copies of checks…and the work performed in exchange for these payments" is more than called for by the order, or again, more properly the subject of depositions in this matter. (See Order, ¶(1)(b)(iv)(c): Common business conducted in the United States, District of Columbia; to the extent such activities exist.)

We are not aware of trips made by JASTEC Co., Ltd. employees to the District of Columbia pursuant to the Operation Assistance Agreement, however, again, Mr. Nakatani's deposition is the appropriate avenue to inquire in this regard. Additionally, we note that rather than make cryptic references to "specific credible information" regarding the alleged trips referenced by Plaintiff, Plaintiff should produce any documents to which it refers and identify any witnesses with information regarding this topic, as it was ordered to do. (Order, ¶2, Plaintiff's Discovery Production to Defendants)

Turning to issue 3 of your letter, Plaintiff's speculation that our clients have failed to provide Human Resource documents, stock plans, etc., is without foundation. Defendants are not required to manufacture such documents. Furthermore, Plaintiff's request for "buy out payments" to shareholders of LTU SAS (including Mr. Bousquet, who presumably has a copy of the purchase agreement) as one example has nothing to do with the jurisdiction of the District of Columbia Court over either JASTEC Defendant and is another clear attempt by Plaintiff to expand discovery beyond that ordered by the Court (See Order, ¶(1)(iv)(d): "…stock options or bonus plans".

Similarly, Plaintiff's requests as set forth in issue 3 of your letter, for documents relative to LTU SAS, a French company, providing products, services or marketing to JASTEC Co. Ltd. in Tokyo, is yet another improper attempt to expand the Court's Order in this matter. How JASTEC Co. Ltd. pays its employees for work done solely in Japan, and whether it passes that cost through to LTU SAS pursuant to the agreement, is not relevant to whether JASTEC Co. Ltd. is subject to the Court's jurisdiction in the District of Columbia. Neither does it make JASTEC policies on paying its employees in Japan a "shared" policy. Likewise, the concept that *if a*

Walter Steimel, Jr.
2101 L Street, NW
January 31, 2008
Page 3

# jackson|lewis

Attorneys at Law

JASTEC employee worked at an LTU, Inc. location then the employee would be expected to follow LTU work rules does not make such polices "shared" and, to the contrary, suggests the opposite. Regardless, the provision is conditional. If Plaintiff has a *factual* basis to assert that Defendants are withholding Human Resources documentation, as asserted, then, under the terms of the Order, Plaintiff is obligated to reveal those facts. (Order, ¶2)

Issue 4 of your letter states, without foundation except your speculation, "we have reason to believe that there are licensing and similar documents that your client did not provide." Our clients' records reveal no licensing agreements between either LTU Defendant and either JASTEC Defendant in existence at relevant times pursuant to the Court's Order, Plaintiff's speculative beliefs notwithstanding.

In issue 5, Plaintiff evidently intends to read the Order as calling for the production of all LTU press releases and promotional materials, either because they were developed in the District of Columbia or, perhaps, because they *refer* to *LTU* activities undertaken in the District. Given that the Order is targeted at jurisdiction over JASTEC, such a reading of the order is misplaced. Our clients have agreed to supply, if such exists, materials directed by, relating to or on behalf of a JASTEC defendant to the District of Columbia or for their activities in the District of Columbia. If you claim that LTU press releases meet the intent of the Order, please produce them to Defendants pursuant to the Order, ¶2 and allow us to show them to our client. However, having made inquiry of our clients, Defendants' responses remain as stated.

As to issue 6, Defendant LTU Technologies, Inc. produced a record of payments to the Ashcroft Group. Plaintiff has been in possession of the agreement between the Ashcroft Group and Defendant LTU Technologies, referenced in Paragraph 6 of your letter for quite some time. The Court's Order directed Defendants to provide "copies of receipts for payments made to the Ashcroft Group." In the absence of actual receipts from the Ashcroft Group, our clients provided Plaintiff with a record of payments to the Ashcroft Group. We note that Plaintiff was already in possession of public records reflecting those payments, therefore Plaintiff's additional requests as set forth in your January 28, 2008 letter are repetitive and beyond the Court's Order. Again, we do not agree that the Order contemplates LTU agreements with an entity in the District of Columbia, because that has nothing to do with the limited discovery ordered by the Court as to jurisdiction over the JASTEC defendants. The plain meaning of the order is JASTEC agreements directed to an entity in the District. We have already done you the courtesy (where it favored your) of acknowledging that the Order should be interpreted with common sense and in respect of its purpose. We request the same approach in the other direction, rather than threats of motions practice.

Plaintiff's requests set forth in issue 7 of your January 28, 2008 letter have no basis in the Order. We refer you to our responses set forth above to address your demand for additional information, including drafts or notations to writings produced and for documents that were already produced to be produced a second time in electronic format. We will not respond to the tone of your letter, and the baseless and assertions and innuendo in the final section, except to state that we will not indulge in ad hominem attacks.

Walter Steimel, Jr.
2101 L Street, NW
January 31, 2008
Page 4

# jackson|lewis
Attorneys at Law

Notwithstanding the tone of your correspondence, we are available to discuss this matter with you, should you wish to do so.  As you may know from John Snyder, my response to your letter has been delayed by my absence from the office at depositions this week.  I am still out and expect to be unavailable to conference today (Thursday) or Friday.  However, you may contact Maggie Kaye, the attorney in our New York office who is working with you on Mr. Nakatani's deposition, in my stead.  She can be reached at (212) 545-4000.

Very truly yours,

Joseph E. Schuler /Jjs

Joseph E. Schuler

cc:     Marjorie N. Kaye, Jr.
        John A. Snyder, Jr.
        Bradley C. Wright

# EXHIBIT 3

# Greenberg
# Traurig

Walter Steimel, Jr.
Tel. 202.452.4893
Fax 202.331.3101
SteimelW@gtlaw.com

February 1, 2008

**VIA FACSIMILE (703-821-2267)**
**and FIRST-CLASS MAIL**

Joseph Schuler, Esq.
Jackson Lewis
8614 Westwood Center Dr
Suite 950
Vienna, VA 22182
United States of America

Re:   Advanced Digital Forensics Solutions, Inc. v. LTU Technologies, Inc., et al.

Dear Joe:

We are in receipt of your January 31, 2008 response to my letter of January 28, 2008. This is to address the points you made in advance of a teleconference with Maggie Kaye at 9:30 a.m. on Monday, February 4, 2008.

To summarize the progression of events that led to the Magistrate's Order:

Both parties participated in a discussion about the proper scope of discovery; in fact, we modified our requests in response to specific objections you raised. I draw your attention to your letter of November 15, my response of November 19, your reply of November 20, our offer to modify our request, and finally, our filing of that modified response with the Court which identified your positions and our differences with them. It was clear that we were not going to agree to the scope of discovery, as we have not been able to agree upon any discovery issue in any of the three cases to date; however, it is equally clear that we shifted our position as much as we thought possible. With your consent, we fairly presented both positions to the Court, and you did not object.

In that modification process; however, we did not abandon the underlying notions of the proper conduct of discovery,  Neither of us put into play the "standard definitions and instructions" related to discovery, or any issue that standard procedures should be amended. Neither we nor the court abandoned the basic tenets of document production such as identification of source, identification of where documents are kept in the normal course of business, or production of all documents relevant to a discovery question.

ALBANY

AMSTERDAM

ATLANTA

BOCA RATON

BOSTON

BRUSSELS*

CHICAGO

DALLAS

DELAWARE

DENVER

FORT LAUDERDALE

HOUSTON

LAS VEGAS

LONDON*

LOS ANGELES

MIAMI

MILAN*

NEW JERSEY

NEW YORK

ORANGE COUNTY

ORLANDO

PHILADELPHIA

PHOENIX

ROME*

SACRAMENTO

SILICON VALLEY

TALLAHASSEE

TAMPA

TYSONS CORNER

WASHINGTON, D.C.

WEST PALM BEACH

ZURICH

*Strategic Alliance

Greenberg Traurig, LLP | Attorneys at Law | 2101 L Street, NW | Suite 1000 | Washington, D.C. 20037
Tel 202.331.3100 | fax 202.331.3101

www.gtlaw.com

Joseph Schuler, Esq.
February 1, 2008
Page 2

---

We are aware that the scope of discovery here is limited to uncovering the facts that demonstrate the Jastec entities have minimum contacts in the District of Columbia, and have otherwise engaged in activities in the District of Columbia sufficient to confer personal jurisdiction on them. You misunderstand any of our arguments to the extent that you believe we are seeking information or documents outside of that scope, and in particular, relationships between LTU S.A.S. (France) and Jastec (Japan).

While the scope is limited, the duty of your clients to provide relevant documents is not. Your clients cannot simply choose a relevant document applicable to each issue and provide that document to the exclusion of other relevant documents. All documents likely to lead to the discovery of relevant information must be provided. One representative financial document of each transaction is insufficient – your clients must produce all financial documents.

### Responding to each of your substantive paragraphs:

**Page 2, ¶ 1: Issue 2.**

The Order, at section a (iii), requires the production of "financial records." This does not mean "financial records of Defendants' choice." Invoices, vouchers and checks are financial records. You are required to produce them forthwith. The Order, at section a (ix), requires the production of employee benefit records. Reimbursement to Jastec employees for travel to DC is a relevant employee benefit. You are required to produce these documents forthwith.

**Page 2, ¶ 2.**

The Court's Order to produce "financial records reflecting payments or guarantees" did not say "one example of each" but instead includes all payments to individual LTU employees, and agents of LTU, as well as payments to Jastec employees for work in or travel to D.C. The spirit of the Court's Order, as well as a common sense reading, requires production of financial records related to minimum contacts. You are required to produce these documents forthwith.

**Page 2, ¶ 3.**

The fact that Mr. Nakatani is required to testify to certain matters does not relieve your clients' duty to produce responsive documents. Your client must produce records of trips made by Jastec employees to DC for the relevant time period. Our January 28 letter simply provided you notice, in an attempt to avoid unnecessary motions practice, that we were aware of documents your clients were withholding. If your client is not forthcoming, we will provide you with notice of the outside sources on which we will be required to rely. We are hoping that this confrontation will not be necessary.

Joseph Schuler, Esq.
February 1, 2008
Page 3

---

**Page 2, ¶ 4.**

Mr. Bousquet has few or no documents related to his time at LTU. He was locked out of his office after he indicated that he would be leaving, and all of his documents, including personal items, are still in the custody of LTU. We request that your clients provide all purchase agreements and payments to LTU employees *in D.C.* We do not request buyout payments to shareholders located in France, and your objection is based upon a misunderstanding of our argument.

**Page 2, ¶ 5.**

We are at a loss to understand your argument. Relationships between France and Japan that do not touch D.C. are irrelevant. However, if any employee of either Jastec entity is subject to LTU Technologies, Inc.'s policies, or any LTU Technologies, Inc. employee is subject to either Jastec entity's policies, then the underlying policy is relevant and must be produced.

**Page 3, ¶ 1: Issue 4.**

The requirement that your clients produce license agreements in not time limited. Your clients are required to produce all licenses that are valid, or under which there are ongoing duties, during any part of the period from February 2005 to present, regardless of when they were executed.

**Page 3, ¶ 2: Issue 5.**

It is clear that we are entitled to all releases that refer to either Jastec entity's presence and activities in D.C. You stated that you want *us* to produce *your* clients' press releases to you. We will. However, *our* production does not absolve your clients of their obligation to produce all press releases issued in or for the D.C. market or regarding any private or public entity in D.C. that mentions either Jastec entity, or that are for the benefit of either Jastec entity. Your statement includes an admission that your clients have additional documents to produce. You are required to produce these documents forthwith.

**Page 3, ¶ 3: Issue 6.**

Jastec hired the Ashcroft Group. We identified that fact in our motion to the Court, and it is a matter of public record. Your client, Jastec, has withheld these records. Contrary to your assertion, we never received a copy of either of the Ashcroft Group agreements from you. Furthermore, Jastec made payments totaling $20,000 to the Ashcroft Group in 2005, and your clients have not produced evidence of those payments. You are required to produce the

02/01/2008    17:25                                                                    NO.521    P005

Joseph Schuler, Esq.
February 1, 2008
Page 4

agreements between the Ashcroft Group and each Defendant, as well as evidence of all payments, forthwith.

**Page 3, ¶ 4: Issue 7.**

The purpose of the Order is to have Defendants deliver all documents that relate to both Jastec entities' operations or presence in the District. A common sense reading of the Order is that production should follow normal rules for discovery and be in accordance with prior requests between the parties.

I am not "threatening motions practice," but I am advising you that if you do not cooperate, we will need to seek relief from the Court. I am providing fair warning that we know that your clients have not been forthcoming, so that you can speak with them prior to my undertaking any action.

**Page 4, and Conclusion**

Your clients have a duty to produce, and they are in control of the pertinent documents. Several times in your letter you stated that if we have information that your clients are withholding information we have a duty to tell you. See Page 2, paragraph 5; page 3, paragraph 2. Your clients are not permitted to withhold documents until we catch them. In fact, the Court recognized that jurisdictional discovery is permitted to prevent a party from "'defeat[ing] the jurisdiction of the federal court by withholding information on its contacts with the forum.'" Mem. Order 2 (citing *Bancoult v. McNamara*, 214 F.R.D. 5, 10 (D.D.C. 2003) (citation omitted).

If your clients do not produce the documents to which we are entitled pursuant to the Court's Order and I have to use alternate sources, I will identify the sources on which I intend to rely. I am hopeful that you can prevail upon your clients to produce all relevant documents. Until then, I will be relying on the documents I already identified in my filings with the Court, and will amend as soon as it appears that I need to rely upon additional documents or information.

Very truly yours,

Walter Steimel, Jr.

WES/mhc

Joseph Schuler, Esq.
February 1, 2008
Page 5

cc:     Mark Hogge, Esq.
        Marjorie Kaye, Jr., Esq.
        Bradley C. Wright, Esq.