IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ADVANCED DIGITAL FORENSIC SOLUTIONS, INC.** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| **LTU TECHNOLOGIES, INC.** | ) ) | |
| and | ) | Civil Action No. 1:07-CV-00683 CKK/AK |
| **LTU TECHNOLOGIES, S.A.** | ) ) | |
| and | ) ) | |
| **JASTEC INTERNATIONAL, INC.** | ) ) | |
| and | ) ) | |
| **JASTEC Co., Ltd.** | ) ) | |
| Defendants. | ) ) ) | |

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
ITS MOTION TO COMPEL DISCOVERY

Dated: April 14, 2008

Respectfully submitted,

**FOR THE PLAINTIFF:**

    _/s/ Walter Steimel, Jr._
Walter Steimel, Jr. (DC Bar #446262)
Mark L. Hogge (DC Bar #404882)
**GREENBERG TRAURIG, LLP**
2101 L Street, NW, Suite 1000
Washington, DC 20037
(202) 331-3100 (telephone)
(202) 331-3101 (facsimile)
SteimelW@gtlaw.com

## TABLE OF CONTENTS

I.      Defendants Insufficiently Designated Rule 30(B)(6) Witnesses                    **3**

II.     Information Promised During Depositions and Additional Documents
        Requested by Plaintiff Are Within the Scope off the Order                       **7**

III.    Defendants Attempt to Hide Their Unified Enterprise And Specific Jurisdiction
        Activities                                                                      **11**

IV.     Defendants' Cited Cases Are Inapposite                                          **13**

V.      Conclusion                                                                      **13**

# TABLE OF AUTHORITIES

## Federal Cases

*Alexander, et al. vs. FBI, et al.*
186 F.R.D. 137 (D. D.C. 1998).................................................................................. 4, 5

*Artis v. Greenspan,*
223 F. Supp. 2d 149 (D.D.C. 2002) ............................................................................ 13

*Doe, et al. v. Unocal Corp., et al.,*
248 F.3d 915 (9th Cir. 2001) ..................................................................................... 13

*Gibbons & Co. Inc. v. Roskamp Institute,*
No. 06-720, 2006 WL 2506646, (D. D.C. Aug. 28, 2006) .......................................... 8

*Slottow v. American Cas. Co. of Reading, Pennsylvania,*
10 F.3d 1355, 1360 (9th Cir. 1993) ........................................................................... 13

*Tequila Centinela, S.A. de C.V. v. Bacardi & Company Ltd.,*
242 F.R.D. 1 (D. D.C. 2007)......................................................................................... 5

## Federal Statues

30(b)(6)                                                                                            passim

Fed. R. Civ. P. 37(b)(2)(A) and (c)                                                                  3, 14

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
## ITS MOTION TO COMPEL DISCOVERY

Plaintiff Advanced Digital Forensic Solutions, Inc. ("ADF"), by and through its undersigned counsel, hereby files its Reply Memorandum in Support of its Motion to Compel Discovery from Defendants LTU Technologies, Inc., LTU Technologies, S.A., JASTEC International, Inc., and JASTEC Co., Ltd. (collectively "Defendants").

Defendants withheld relevant information and documents that were promised during depositions and never produced other relevant documents as part of the order of Magistrate Judge Kay dated December 20, 2007 ("Order"). Defendants complain that the Plaintiff's motion is not a motion to compel, but is a request to expand the scope of discovery. Defendants further state that they have fully complied with the Court's order. Had Defendants complied with the Order, Plaintiffs would not be before the Court with its Motion to Compel.

The discovery dispute before this Court can be reduced simply to two issues: (i) Defendants failed to produce Rule 30(b)(6) witness(es) that were fully prepared or knowledgeable to address all of the issues set forth by the Court for examination; and (ii) Defendants played a "shell game" where certain evidence they apparently believe must be damaging was not produced in document discovery, and then also was not provided during depositions. Furthermore, in limited jurisdictional discovery where Defendants are permitted to either provide documents or make information available during discovery, Defendants cannot both refuse to provide documents and proffer a 30(b)(6) witness who cannot answer a multitude of relevant questions and who "promises to get back to us later," but then fail to provide either further documents or more information.

Finally, Plaintiffs have reasonably pursued discovery in this case, but found during depositions that Defendants are withholding documents and information that should have been

disclosed pursuant to the Order. Plaintiffs have pursued reasonable efforts to obtain the information and have provided Defendants adequate time to comply with the Court's Order. However, even Plaintiff's attempts to have Defendants identify which Defendant provided each document have been rebuffed.[1] Defendants should be ordered to provide the missing information, or the Court should order that all of the Defendants are subject to the jurisdiction of this Court.

Plaintiff offers the following Memorandum and respectfully requests that the Court grant Plaintiff's Motion to Compel and require Defendants to provide further limited jurisdictional discovery, or in the alternative, requests that the Court enter an order establishing personal jurisdiction over all the Defendants pursuant to Fed. R. Civ. P. 37(b)(2)(A) and (c).

## I.    DEFENDANTS    INSUFFICIENTLY    DESIGNATED    RULE    30(B)(6) WITNESSES

It is clear from the excerpts provided from Alexandre Winter's deposition in Plaintiff's Motion to Compel that Defendants did not produce their most knowledgeable Rule 30(b)(6) designee. Winter could not answer all questions concerning LTU, Inc.'s and LTU, S.A.'s ("the LTU Defendants") business and relationships with JASTEC International and JASTEC Co. ("the JASTEC Defendants"). Winter repeatedly referred to a former CEO and current director of one or more of the LTU Defendants', Chahab Nastar, or P. Kevin Smith, the CFO of the LTU Defendants, as more knowledgeable sources. He also made many statements about "double checking" or "getting back" to Plaintiff regarding his lack of knowledge of certain issues.

---

[1] The documents provided by Defendants do not identify the source of the documents, and most do not identify the Defendant providing the document. Defendants have used the Order as an excuse to ignore even the most fundamental rules of discovery, but it has become apparent that the JASTEC Defendants provided no documents or information during discovery, except for the deposition of Mr. Noboru Nakatani.

Courts have addressed similar situations where Rule 30(b)(6) witnesses were not prepared, were improperly designated or where more than one Rule 30(b)(6) designee was required to adequately respond to the requests. In *Alexander, et al. vs. FBI, et al.,* 186 F.R.D. 137 (D. D.C. 1998), the defendants designated a Rule 30(b)(6) witness to testify about matters related to "Filegate," the case involving allegedly improper access by the Clinton White House to FBI files of former Republican administrations' employees. The *Alexander* court found that the defendants' designee could testify competently as to some issues noticed by the plaintiffs. However, it felt that her designation as the lone competent 30(b)(6) witness could be inadequate.[2]

The court cited four duties of a designating party under Rule 30(b)(6): (1) the deponent must be "knowledgeable on the subject matter identified as the area of inquiry;" (2) the corporate or governmental designating party must "designate more than one deponent if it would be necessary to do so in order to respond" appropriately[3]; (3) the designating party must "prepare the witness to testify on matters not only known by the deponent, but those that should be reasonably known by the . . . party;" and (4) the designating party must "substitute an appropriate deponent when it becomes apparent that the previous deponent is unable to respond to certain relevant areas of inquiry." *Id*. at 141.

Although the defendants' designee in *Alexander* could testify competently about some topics, the court agreed that the plaintiffs still deserved responses to their unanswered

---

[2] The court eventually ruled that while the plaintiffs were not entitled to reopen depositions at that time, they were entitled to answers to their questions. *Id*. at 141. Therefore, the court allowed the plaintiffs to pose interrogatories and requests for production to the defendants with respect to all unanswered inquiries. *Id*. In addition, the court left open the possibility of further 30(b)(6) depositions if the written discovery and a later individual deposition did not satisfy the plaintiffs' requests. *Id*. at 142. ADF would agree that if the Court finds further depositions unsuitable, Defendants should be required to produce all referenced documents that would answer the questions Winter could not or Plaintiffs could be allowed to propound limited interrogatories.

[3] Indeed Rule 30(b)(6) specifies that an organization "shall designate *one or more* officers, directors or managing agents, or other persons . . . ." (emphasis added).

questions. *Id.* at 142. The court found that the designation of one person with the broadest scope of knowledge was unacceptable if he or she still was unable to testify regarding all noticed subjects, and that a party had a duty to designate more than one knowledgeable person when required. *Id.* Plaintiff ADF still deserves responses to its questions. The LTU Defendants also had a duty to designate a second 30(b)(6) witness upon the discovery that Winter was incompetent to testify about certain topics.

The rule that a party has a duty to designate as many Rule 30(b)(6) witnesses as necessary to respond to all relevant questions is regularly enforced by this Court. In *Tequila Centinela, S.A. de C.V. v. Bacardi & Company Ltd.*, 242 F.R.D. 1 (D. D.C. 2007), the defendant's Rule 30(b)(6) witness claimed that it would not have sufficient knowledge of every question for which the plaintiff requested an answer. *Id.* at 5. The court ordered the Bacardi defendant to "provide as many 30(b)(6) witnesses as may be necessary to the relevant areas of inquiry that are specified with reasonable particularity by the plaintiff."[4] *Id.* (citing *Alexander* at 141).

Due to Winter's inability to answer all relevant questions posed to him, the LTU Defendants now should be ordered to produce as many knowledgeable Rule 30(b)(6) witnesses as necessary to respond to Plaintiffs' inquiries. If Defendants choose to produce Winter again for deposition concerning the subjects about which he was unable to testify, he must be better prepared and bring all relevant documents to the deposition, or Defendants must designate different, competent Rule 30(b)(6) designee(s) to testify on the matters about which Winter could not.

---

[4] Here, the "areas of inquiry" are not in doubt due to the specific nature of the Court's Order.

5

Defendants claim that questions its Rule 30(b)(6) designee could not answer were beyond the scope of the Order.  Defendants' claims have no merit, are unsupported and are made merely for convenience.  The Order noted that while some of Plaintiff's phraseology in its original proposal for document production under jurisdictional discovery was broad with respect to these discovery purposes, "such inquiries [could] be more appropriately directed to a witness during deposition."  (Order at 3.)  Defendants must either produce documents, or produce a Rule 30(b)(6) designee that is competent on all topics outlined by the Court.

The Order allowed Plaintiff to depose Defendants' designee about shared employee relations between the LTU Defendants and the JASTEC Defendants, common business conducted in DC by Defendants, and agreements among Defendants.  (Order at 4-5).  The provision of travel details, including the production of records, receipts, invoices, reimbursements and payments for this travel if the deponent cannot remember sufficient details regarding the trips, is encompassed by the above-enumerated topics.  In addition, further meeting details, requiring the production of presentations, notes and documents used at the meetings if the designee is unsure of all topics discussed or materials used at them, clearly fall under the "common business" umbrella.

The Order also permitted the gathering of evidence related to "financial resources shared by the companies."  (Order at 4).  As Winter was unable to expound upon the profitability of LTU, Inc., funding sources for LTU, S.A. and how they might relate to LTU, Inc. or even pertinent details about the LTU Defendants' financial situations, he should be ordered to return to answer the questions he could not or Defendants must produce the documents he would have used to refresh his recollection.

The LTU Defendants may not produce a incompetent designee who cannot answer all relevant questions posed to him and then *also* refuse to produce the documents to which the designee said he could refer for the answers. Defendants must cooperate in one way or the other. Otherwise, they will be permitted to sidestep both the letter and the spirit of the Court's order. Plaintiff is entitled to (1) depose additional Rule 30(b)(6) witnesses; (2) again depose a fully prepared Alexandre Winter with assurances that he can answer all questions he previously could not; (3) receive the documents in which Winter stated he could have found answers to Plaintiff's questions; or (4) propound limited written interrogatories to Defendants covering the topics about which Winter could not testify.

## II.    INFORMATION PROMISED DURING DEPOSITIONS AND ADDITIONAL DOCUMENTS REQUESTED BY PLAINTIFF ARE WITHIN THE SCOPE OF THE ORDER

During the deposition of Winter, as addressed earlier, the deponent made numerous references to further information and documents he would need to examine in order to answer specific questions posed by Plaintiff. This additional information is part of that which Defendants refuse to provide to Plaintiff even though it is clearly relevant as Winter testified he would need to review the information or documents in order to answer Plaintiff's counsel's questions.

Winter admitted that he did not know whether LTU, Inc. had turned a profit, about funding sources for LTU, S.A.[5], or simple details of the LTU Defendants' financial situations at certain points in time. However, the Order required testimony from Winter as the 30(b)(6) designee regarding "financial resources shared by the [Defendants]" and "common business and contracts reflecting this common business conducted in [DC]." (Order at 4).

---

[5] Information regarding LTU, S.A.'s finances are relevant to Plaintiff's integrated enterprise and alter ego theories of jurisdiction.

Winter appeared unsure of which JASTEC Defendant might have paid for an unknown number of trips to Japan he made to meet with JASTEC Co. personnel. To the extent that records of this travel encompassed "shared financial resources" or "common business," the Order required questions regarding the trips to be answered completely. (Order at 4).

Possible existence of e-mail communication with JASTEC Co is a third area about which Winter's testimony was deficient.[6] Evidence of these e-mails provides support for more "common business" activities of Defendants, and Winter should have testified more fully about the substance of the e-mails. (Order at 4).[7]

Winter also stated he had to double check first, the existence of, and second, the terms of, a particular service agreement with JASTEC, Co. that Defendants did not produce. Counsel for Defendants testified about this mystery agreement, but this is insufficient. Winter should have been prepared to testify regarding [all] "agreements between LTU and the JASTEC Defendants." (Order at 4.) In a similar vein, with respect to potential contracts and documents surrounding sales of LTU software in Japan, Winter knew next to nothing.[8]

While Defendants provided some general accounting records of expenses and fees, they did not, as stated earlier, reference specific trips or identify the flow of funds between LTU and the JASTEC Defendants. Nor did these sparse records provide enough detail for Winter to determine exactly to what they might refer and he suggested he would need to

---

[6] While courts often find that e-mail, phone and fax communications into the District are insufficient to confer personal jurisdiction, the instant situation is distinguishable. In a case where communications are incidental to a contract for services because it is mere "coincidence" that one party is located in DC, courts often cannot support a finding of personal jurisdiction using such communication evidence. *See e.g., Gibbons & Co. Inc. v. Roskamp Institute*, No. 06-720, 2006 WL 2506646, (D. D.C. Aug. 28, 2006). However, in this case, LTU, Inc. is a wholly owned subsidiary of the JASTEC Defendants. Communication among the Defendants is relevant as it serves to authenticate the level of involvement the JASTEC Defendants have in LTU, Inc.'s and LTU, S.A.'s business.
[7] Lacking this, Defendants should produce the e-mails.
[8] The JASTEC Defendants' sales support for LTU is directly relevant to their contacts with a business in the District and their "common business conducted in the District." (Order at 4.) If the JASTEC Defendants are advising and providing services and support to LTU, Inc. in DC, they are directing their activities towards the

check invoices.[9]   Once again, Winter's inability to testify fully as to "shared financial resources" was apparent.  (Order at 4).

From the testimony of both deponents, it is also clear that Defendants withheld documents from Plaintiff during this discovery period.  Defendants should not be allowed to pick and choose certain documents that are relevant and leave others out; Defendants need to provide all relevant documents responsive to each topic identified in the Order.

JASTEC International's help in forming financial reports and marketing strategies also were discussed in testimony, but again, Defendants provided no documentation for the consulting contract itself.  Winter's testimony about the contract among the LTU Defendants and JASTEC Co. regarding software sales in Japan entitles Plaintiff to see this agreement under the approved "agreements among the [Defendants]" topic in order to evaluate whether JASTEC Co. contracted to provide further services to aid in marketing the LTU Defendants' software. (Order at 4).  These marketing activities are at the heart of Plaintiff's Complaint and would be evidence of the JASTEC Defendants supplying services to LTU, Inc. in DC.

During the president of JASTEC International's deposition, Noboru Nakatani referenced attendance at a board meeting in 2006, a meeting at which two JASTEC Co. employees, including its CEO, were present.  The attendees reviewed LTU, S.A.'s financials[10] and LTU, S.A. gave a presentation on business strategy.  Nakatani admitted that LTU, S.A. made a presentation during this meeting but could not remember if he also received documents.  This board meeting regarding "business strategy" could potentially be one of the

---

District.  If this support involves marketing, an activity of which Plaintiff complains in its Complaint, such information is directly relevant to specific jurisdiction.  This argument is more fully addressed in § III. below.
[9] In addition, any accounting records Defendants claim are in the possession of their outside accountants must be produced as they are still within Defendants' control.
[10] Plaintiff notes that Defendants reference a mistake contained within Nakatani's deposition: the use of "dollars" instead of "yen" on page 125 of his transcript. (Pl.'s Opp'n 9 n7).  Plaintiff respectfully asks the Court to disregard this statement in Defendants' footnote.  Defendants never filed an errata sheet to correct any such errors in their

most important pieces of information relating to the JASTEC Defendants' involvement with and guidance of the LTU Defendants' marketing and other strategic activities within the District. All documents surrounding this meeting are highly relevant to general and specific jurisdiction, and to an analysis under the alter ego and integrated enterprise tests. To the extent that these materials contain "press releases, promotional materials, proposals or agreements" directed to DC (Order at 3), consulting and licensing agreements (Order at 3) or "common business" (Order at 4), they should be produced.

The Court also required Nakatani to testify about not only the extent of his presence in DC, but also a "description or summary" of the JASTEC Defendants' travel to and presence in the District. (Order at 4). During his deposition, he admitted to traveling to the District sixteen to nineteen times between 2004 and 2007. Defendants provided no supporting records of his travel in the form of payments, reimbursements or financial records.[11] Plaintiff is entitled to these documents since they are likely to reflect "copies of financial records reflecting payments or guarantees" from JASTEC International to LTU. (Order at 3.) Pursuant to this item, Defendants did provide evidence of one reimbursement to Kevin Smith for a trip to Japan, but provided no documents for trips made by Alexandre Winter, Chahab Nastar or other employees and agents of the LTU Defendants even though they admit to the existence of numerous trips that were paid for directly by Jastec Co., Ltd.

In all situations described above and more specifically in Plaintiff's Motion to Compel, Winter and Nakatani testified that they would need to check documents in order to find answers to Plaintiff's questions and in addition, sometimes stated they simply did not know the answer. As the deponents could not testify properly to their assigned topics,

---

witnesses' testimony; therefore, the transcripts became certified as transcribed.
[11] Nor did Defendants give supporting documentation for the two JASTEC Co. employees' travel to DC in 2006.

Defendants are entitled to see the documents they referenced as all are relevant to a demonstration of contacts between the JASTEC Defendants and the District, general and specific jurisdiction, and analyses under the alter ego, agency and integrated enterprise tests for jurisdiction. However, Defendants failed to produce any of these documents or provide further information. Defendants simply may not both refuse to provide documents and also assert that they cannot answer questions surrounding those documents and activities in depositions and declare that jurisdictional discovery is finished.

III.   **DEFENDANTS ATTEMPT TO HIDE THEIR UNIFIED ENTERPRISE AND SPECIFIC JURISDICTION ACTIVITIES**

The depositions made clear that the four Defendants are essentially one unified enterprise. The LTU Defendants and the JASTEC International Defendant, exist only because they are funded by JASTEC Co. The revenues from these Defendants appear to consist solely of money provided by JASTEC Co. to each Defendant and then passed among the Defendants as "consulting fees." It became clear during Mr. Nakatani's deposition that his sole function is to manage the LTU entities on behalf of JASTEC Co. In light of these discoveries, which go to the heart of alter ego and interrelated concern bases for jurisdiction, it is clear why Defendants are working so hard not to disclose any financial information or show the source of travel expense payments.

Travel records for JASTEC Co. officer and employee travel into the District, Nakatani's travel into DC and Winter's travel elsewhere to discuss Defendants' common business plus the "business strategy" presentations made at board meetings whether conducted in DC or in Tokyo are all highly relevant to the JASTEC Defendants' contacts with the District. These records, as well as the notes from meetings conducted in the District,

11

provide further context for the extensive marketing, advertising and consulting services provided in DC by the JASTEC Defendants.

The few documents received thus far from Defendants, and the testimony of deponents, demonstrate that the JASTEC Defendants formulate financial reports and marketing strategies for the LTU Defendants.[12]  These latter activities support specific jurisdiction as the activities complained of in Plaintiff's Complaint: LTU's marketing, misleading advertising and unfair business practices.  Nakatani's communications with LTU, Inc., which occur several times a month, and Nakatani's travel to and attendance at a board meeting in DC (the same meeting attended by JASTEC Co. employees) further solidifies the depth of the JASTEC Defendants' presence in and involvement with the LTU Defendants' business and marketing strategies.

Defendants must produce records related to those meetings and consultations, as each of them support a finding of personal jurisdiction in the District.  Defendants statements regarding the competitive sensitivity of any financial documents is unavailing -- this Court has an extensive and comprehensive Protective Order in place to protect even the most sensitive of documents.

Plaintiff further notes that Defendants never certified or provided errata sheets for either of the depositions.  Plaintiff reviewed both of the deposition transcripts and compared them to the videotapes that Plaintiff commissioned.[13]  The fact that Defendants have not attempted to provide additional information promised during the depositions, and have failed even to take the

---

[12] The efforts of Nakatani and Winter to avoid fully answering questions about the financial picture of their respective subsidiaries clearly stems from the fact that all the Defendants' finances are interrelated, and that the JASTEC Defendants are the sole source of all funding for the LTU Defendants.

[13] As a consequence, Defendants are now barred from contesting any statement made by its witnesses under oath, as Defendants appear to attempt to do in their footnote 7 (Pl.'s Opp'n 9).

time to verify the accuracy of the deposition transcripts, further demonstrates the need for Plaintiff to review supporting documents to verify relevant facts.

## IV.    DEFENDANTS' CITED CASES ARE INAPPOSITE

The Defendants' reliance on *Artis v. Greenspan*, 223 F. Supp. 2d 149 (D.D.C. 2002), for the fact that jurisdictional discovery should be limited is inapposite to the case at bar.  First, that case involves discovery related to subject matter jurisdiction, not personal jurisdiction, and the scope of the quote cited by Defendants was with respect to subject matter jurisdiction.  *Id*. at 154. Secondly, the Court in the instant matter has granted jurisdictional discovery and set forth the bounds of that discovery.  Defendants have failed to comply with the Court's Order and is attempting to conceal highly relevant information.

In fact, some of the information Defendants are attempting to conceal is precisely the limited jurisdictional discovery that is permitted in and relevant to personal jurisdictional analysis.  The court in *Doe, et al. v. Unocal Corp., et al.*, 248 F.3d 915 (9th Cir. 2001), cited by Defendants, noted that "inadequate capitalization may alone be a basis for holding the parent corporation liable for the acts of a subsidiary."  *Id*. at 927 (citing *Slottow v. American Cas. Co. of Reading, Pennsylvania*, 10 F.3d 1355, 1360 (9th Cir. 1993)).  The financial information made available to date indicates that the Defendant subsidiaries would not exist but for the day-to-day cash funding provided by the JASTEC Co. parent Defendant.

## V.    CONCLUSION

Plaintiff respectfully requests that this Court grant its Motion to Compel Discovery as requested both in its Motion and within this Reply.  In the alternative, Plaintiff requests that the Court enter an order pursuant to Fed. R. Civ. P. 37(b)(2)(A) and (c), that is, a determination that the designated facts have been established and that the Court has personal

13

jurisdiction over the JASTEC Defendants.    Plaintiff also requests attorneys fees and reasonable expenses related to this motion and the related discovery, as provided for in Fed. R. Civ. P. 37(b)

Dated April 14, 2008                              Respectfully submitted,

**FOR THE PLAINTIFF:**

_____/s/ Walter Steimel, Jr._____
Walter Steimel, Jr. (DC Bar #446262)
Mark L. Hogge (DC Bar #404882)
**GREENBERG TRAURIG, LLP**
2101 L Street, NW, Suite 1000
Washington, DC 20037
(202) 331-3100 (telephone)
(202) 331-3101 (facsimile)
SteimelW@gtlaw.com